**In re Timothy Allen GEYER, and Bertha Irene Geyer, Debtors.**

**Bankruptcy No. 95–14389–B13.**

United States Bankruptcy Court, S.D. California.

Dec. 16, 1996.

Ronald E. Stadtmueller, San Diego Debt Reorganization and Bankruptcy Center, San Diego, CA, for Debtors/Movant.

Thomas H. Billingslea, Jr., Chapter 13 Trustee, San Diego, CA.

Raymond R. Lee, Suppa Highnote & Lee, San Diego, CA, for Creditor Commercial Credit Corporation.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

Timothy Allen Geyer and Bertha Irene Geyer ("Debtors") seek to void the lien of Commercial Credit Corp., ("CCC") which encumbers their residence. The Debtors move under Bankruptcy Code section 506(d) on the ground that since no equity exists in the residence to secure the claim of CCC, CCC does not have a secured claim. CCC opposes the motion, arguing, that under the holding in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Debtors may not modify CCC's rights as a homestead mortgagee.

## I. FACTUAL SUMMARY

The Debtors own real property in Chula Vista, California, which serves as their primary residence ("Residence"). The Residence is subject to a first priority deed of trust in the amount of $127,349. CCC holds a second priority deed of trust. The Debtors filed a petition under chapter 13 of the Bankruptcy Code on December 29, 1995. At the time of the filing Debtors listed the Residence having a value of $119,000. CCC argues the Residence's value is $137,000 which was the value on a 1993 loan application.

## II. ISSUE

May the chapter 13 debtors use section 506(d) to void or "strip off" a lien on their primary residence when the lien is an unsecured claim under section 506(a)? [1]

## III. DISCUSSION

### A. *Value of the Residence*

The Debtors declare that as of the date of the petition the value of the Resi-

---

**1.** This issue appears to be one of first impression in the Ninth Circuit. The term "strip off" is used where the claim is totally unsecured, as opposed to "strip down" where the claim is partially unsecured. *In re Woodhouse,* 172 B.R. 1 (Bankr. D.R.I.1994).

dence was $119,000. Owners are competent to render an opinion on the value of their property. *Universal Pictures Co. Inc. v. Harold Lloyd Corp.*, 162 F.2d 354, 369 (9th Cir.1947).

■ CCC contends that the value of the Residence is $137,000 which was the value claimed by the Debtors on their March 17, 1993 loan application. CCC maintains that Debtors' three-year old opinion should be given greater weight than their present opinion. CCC provides no other evidence.

This court recognizes that the Debtors had different motivations when filling out the loan application than when preparing the petition. However, the Debtors' declaration is the only evidence presented and its veracity is not sufficiently called into question by the different figure on the loan application. No other evidence has been presented which indicates the Debtors' most recent valuation deserves to be discredited. This court accepts the Debtors' current opinion of $119,000 as uncontroverted evidence of the current value of the Residence and accordingly, finds that no equity exists in the Residence above the first priority deed of trust.

### B. May the Debtors "Strip–Off" CCC's Lien?

■ The Debtors move under Bankruptcy Code sections 506(a) and 506(d). CCC claims entitlement to the protections afforded by section 1322(b)(2).[2]

#### 1. 11 U.S.C. § 506(a)

Section 506(a) provides that an allowed claim is a secured claim to the extent of the

2. References to Code sections are to 11 U.S.C. §§ 101, et seq., unless otherwise indicated.

3. Code section 506(a) provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest.... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

creditor's interest in the estate's interest in the collateral.[3] "[This] section separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim." H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977). Since the value of the first priority deed of trust exceeds the value of the Residence, the value of the estate's interest in the Residence is zero. CCC's interest in the estate's interest can be no greater than zero. Under section 506(a), CCC would not have an allowed secured claim.

#### 2. 11 U.S.C. § 506(d)

Under section 506(d) a lien is void if the underlying claim is not "an allowed secured claim." [4] In *Dewsnup v. Timm*, the Supreme Court determined that a chapter 7 debtor cannot void a lien under section 506(d) when the lien is undersecured by application of section 506(a). 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The *Dewsnup* court did not decide the result if the lien were determined to be completely unsecured under section 506(a). *Id.* at 416–17, 112 S.Ct. at 777–78.

#### 3. 11 U.S.C. § 1322(b)(2)

Bankruptcy Code section 1322 states the elements of a confirmable chapter 13 plan. Under subsection (b)(2) a plan may modify the rights of a holder of a secured claim unless such creditor's claim is secured only by a lien on the debtor's primary residence.[5] CCC argues that *Nobelman* controls in that CCC is a holder of a secured claim, secured by a lien on the debtors' residence.

4. Code section 506(d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void....

5. Specifically, 11 U.S.C. § 1322(b)(2) provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims ...

In *Nobelman,* the Supreme Court held that section 1322(b)(2) prohibits a chapter 13 debtor from relying on Code section 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence. 508 U.S. at 326, 113 S.Ct. at 2108–09. The mortgage in *Nobelman* was partially secured and partially unsecured. *Id.* The holding in *Nobelman* dictates that even if a claim is undersecured under section 506(a), the creditor is still a "holder of [a] secured claim," and as such is entitled to the protection of section 1322(b)(2).

The *Nobelman* court reasoned that the debtor could not bifurcate a creditor's claim into a secured claim and an unsecured claim without modifying the creditor's contract rights and running afoul of section 1322(b)(2). 508 U.S. at 331, 113 S.Ct. at 2111. *Nobelman* focused on the creditor's rights as a secured creditor under the note that applied to the overall claim. *Id.* Bifurcating the creditor's claim into an unsecured claim and secured claim would require the debtor to propose a new schedule of monthly payments to pay the secured claim, a new loan term and a new interest rate, all modifications which section 1322(b)(2) prohibits. *Id.* "*Nobelman* focused on the rights afforded a mortgagee under state law and applicable loan documents only *after* noting that the creditor before it was the holder of a 'secured claim' ..." *In re Hornes,* 160 B.R. 709, 715 (Bankr.D.Conn.1993).

■ The *Nobelman* court's concern does not apply here when the creditor's claim is totally unsecured. Where the estate's interest in property is zero, the claim under section 506(a) is completely unsecured and is not entitled to the protection of section 1322(b)(2). *See, In re Woodhouse,* 172 B.R. 1 (Bankr.D.R.I.1994); *In re Sette,* 164 B.R. 453, 456 (Bankr.E.D.N.Y.1994); *In re Moncrief,* 163 B.R. 492 (Bankr.E.D.N.Y.1994); *In*

*re Williams,* 161 B.R. 27 (Bankr.E.D.Ky. 1993); *In re Lee,* 161 B.R. 271 (Bankr. W.D.Okla.1993); *In re Kidd,* 161 B.R. 769, 771 (Bankr.E.D.N.C.1993); *In re Hornes,* 160 B.R. 709 (Bankr.D.Conn.1993); and *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993).[6] Unsecured creditor's rights are frequently modified under the Bankruptcy Code.

> There is neither a logical or rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead prepetition.

*Plouffe,* 157 B.R. at 200 (footnote omitted). The fact that CCC holds a recorded mortgage lien does not conclusively determine its rights under the Bankruptcy Code.

> The code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property.

*Hornes,* 160 B.R. at 715. CCC does not have an allowed secured claim under section 506(a) and is not entitled to protection under section 1322(b)(2).

## IV. CONCLUSION

■ In order to be afforded the protections of section 1322(b)(2) the creditor must be the holder of a claim which is at least partially secured. *Nobelman,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This court holds that the term "secured claim" as used in section 1322(b)(2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322(b)(2). A chapter 13

---

**6.** The Court is aware of *In re Neverla,* which held that a unsecured junior lienholder was nevertheless entitled to the sanctuary of section 1322(b)(2). 194 B.R. 547, 552 (Bankr.W.D.N.Y. 1996). The *Neverla* court took a functional approach in its interpretation of *Nobelman* and section 1322(b)(2). The court reasoned that the disparate consequences applied to creditors based merely on property valuation did not comport with Congressional intent in the amendment

of section 1322. This Court disagrees. The Congressional intent in enacting section 1322(b)(2) was to change the scheme of the Code with respect to homestead mortgages that were not fully secured. *Grubbs v. Houston First Amer. Savings Assoc.,* 730 F.2d 236, 243 (5th Cir.1984). Legislative history indicates that the amendment is a limited bar, not a complete bar, to modification of creditors' rights. *Id.*

debtor may "strip-off" a lien on his or her primary residence under the plan or under section 506(d) when the lienholder's interest is totally unsecured.

For the foregoing reasons this court grants the Debtors' motion to void the lien of CCC. This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Counsel for the Debtors is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of the date of entry.