In re Chong W. YI and Keum J. Yi, Debtors.

Chong Woo YI, et al., Appellants,

v.

CITIBANK (MARYLAND), N.A., Appellee.

No. 97–15011–SSM.
CIV. A. No. 97–1729–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 29, 1998.

Daniel M. Press, Russell B. Adams, III, Chung & Press, P.C., McLean, VA, for Appellants.

Michael Looney, CEO Citibank (Maryland) N.A., Hagerstown, MD, for Appellee.

## MEMORANDUM OPINION

ELLIS, District Judge.

The matter is before the Court on debtors' appeal from the bankruptcy court's order denying their motion for entry of a default judgment and dismissing the complaint for failure to state a claim. At issue is whether a debtor can avoid a lien on a property that is already encumbered by other, prior liens when the value of those prior liens exceeds the value of the property. In other words, the question is whether such a lien is unsecured under § 506(a) of the Bankruptcy Code and thus void under § 506(d).

### I

Debtors Chong W. Yi and Keum J. Yi, husband and wife, filed their Chapter 7 petition on July 8, 1997. Among the assets of their estate, debtors listed 13124 Cross Keys Court, Fairfax, as a parcel of real property they own. As of the date the petition was filed, the value of the property was $183,-165.00.[1] At that time the property was subject to three liens: (i) a purchase money deed of trust securing a claim of Mellon Mortgage, Inc., in the amount of $172,572.28; (ii) a second priority deed of trust securing a loan from First Union Home Equity Corp. in the

amount of $19,920.61; and (iii) a third deed of trust securing a note held by Citibank (Maryland) N.A. (defendant in this action) in the amount of $11,604.99. As these figures indicate, the value of the first two liens exceeded the value of the property by approximately $9,000.

Therefore, debtors filed this adversary action against Citibank seeking to have the third deed of trust declared void. Debtors contend that because the amount of the claims secured by the first and second deeds of trust exceeds the value of the property, the third deed of trust is wholly unsecured and thus void under § 506(d) of the Bankruptcy Code, which provides that a lien that is not an "allowed secured claim" is void. Thus, debtors claim that Citibank's lien is not "an allowed secured claim."

Citibank did not answer or otherwise respond to debtors' complaint. Accordingly, debtors filed a motion for entry of default judgment. The bankruptcy court denied the motion and further dismissed the complaint for failure to state a claim, relying on *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), as controlling and dispositive authority. Debtors appealed from the denial of their motion and the dismissal of the complaint, and in connection with that appeal they filed a memorandum and argued the matter orally.[2] Thus, the matter is now ripe for disposition.

### II

▮ Debtors first claim that, once Citibank did not answer or otherwise respond to their complaint, the bankruptcy court was required to enter judgment in their favor. They argue that when "a defendant is in default, its liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover." *Caribbean Produce Exch. v. Caribe Hydro–Trailer, Inc.,*

---

1. This is the amount listed by the debtors in their schedules filed with the bankruptcy court. In an adversary proceeding, the value of the property at issue is typically judicially determined based on competing appraisals offered by the creditor and debtor. Here, however, because Citibank has not appeared, the property's value is taken to be the debtor's figure of $183,165.00, as that figure constitutes the only evidence before the Court on this issue.

2. Citibank did not respond to debtors' memorandum, nor did it appear at oral argument, although the record reflects that it was served with a copy of the memorandum.

65 F.R.D. 46, 48 (D.P.R.1974). Yet, as the bankruptcy court noted, although it is true that "[u]pon a default, the court is generally required to deem as true the well pleaded allegations of a complaint ... it is not required to agree that the pleaded facts constitute a valid cause of action. If it finds that no claim is stated, it may, in its discretion, refuse to enter the default judgment." 10 *Collier on Bankruptcy* ¶ 7055.02[2], at 7055–5 (Lawrence P. King, ed., 15th ed. rev.1997) [hereinafter *Collier*]. This sensible rule requires that before a plaintiff is awarded relief there be a legal basis for doing so. Accordingly, debtors' threshold contention fails, and the analysis proceeds to an examination of the merits.

## III

The bankruptcy court's findings of fact are reviewed for clear error, *see* Fed. R. Bankr.P. 8013, and its legal conclusions are reviewed *de novo*. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992). Because the focus of this appeal is the bankruptcy court's conclusion that *Dewsnup* compels dismissal as a matter of law, review here is *de novo*. And, given the central role of *Dewsnup* in the bankruptcy court's decision, analysis here properly begins with a discussion of that case.

The petitioner-debtor in *Dewsnup* owned a parcel of land that secured a loan the respondent-creditor had made to petitioner for approximately $120,000. After petitioner defaulted on the loan, but before any foreclosure sale, petitioner filed for bankruptcy under Chapter 7. Petitioner then instituted an adversary proceeding, seeking to avoid that portion of the $120,000 loan that exceeded the $39,000 value of the property. Petitioner based her argument on §§ 506(a)[3] and 506(d)[4] of the Bankruptcy Code, claiming

that these two sections, read together, required that the value of the lender's lien be reduced to the value of the property securing the loan. Specifically, she argued that (i) because § 506(a) states that an allowed claim is secured only up to the value of the property, it followed that any part of the claim that exceeded the value of the property was unsecured, and (ii) because § 506(d) states that a claim that is not an allowed secured claim is void, it further followed that the excess portion of the claim was not an "allowed *secured* claim" and was therefore void. Put in more colloquial terms, petitioner in *Dewsnup* argued that §§ 506(a) and 506(d) permitted, indeed compelled, "stripping down" a lien, which occurs when "a partially secured lien is bifurcated and only the unsecured portion is [avoided]." *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 37 n. 2 (9th Cir. BAP 1997).

The Supreme Court rejected this argument, holding instead that the two Code sections need not be read as "rigidly tied" to each other, as petitioner had argued. *See* 502 U.S. at 415, 417, 112 S.Ct. at 777, 778. "Rather, the words [in § 506(d)] should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured." *Dewsnup*, 502 U.S. at 415, 112 S.Ct. at 777. Given this, the Supreme Court held that petitioner could not avoid the unsecured portion of the lien because the lien was (i) allowed under § 502 and (ii) secured by the collateral. Nor did it matter, according to the Supreme Court, that the value of the collateral was less than the value of the lien. In the Supreme Court's view, the existence of some collateral sufficed to render the lien a secured claim. In more colloquial terms, then, *Dewsnup* held that § 506(d) does not permit a Chapter 7 debtor to strip down a creditor's lien to the judicially determined value of the underlying collateral.[5]

---

3. Section 506(a) provides:

   An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

4. Section 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...."

5. The Supreme Court bolstered this conclusion by referring to the "pre-Code rule that liens pass through bankruptcy unaffected," 502 U.S. at 417, 112 S.Ct. at 778, and to the fact that "no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien

■ Given this holding, it is not difficult to discern why the bankruptcy court concluded that *Dewsnup* compelled dismissal of this case: *Dewsnup* forbids stripping down, which is only different in degree from "stripping off," [6] the issue in this case. The question, then, is whether stripping off and stripping down are not only different in degree, but also different in kind, such that *Dewsnup* should not apply to the instant facts.

## IV

### A.   *The Lien is Unsecured Under § 506(a)*

Although *Dewsnup* is the Supreme Court decision most analogous to this appeal, it is not dispositive; the facts of *Dewsnup* are significantly distinguishable from the facts of the case at bar such that the bankruptcy court's reliance on *Dewsnup* is ultimately misplaced.[7]

■ In *Dewsnup*, only a portion of the value of the loan exceeded the value of the property. Here, the full value of Citibank's lien exceeds the value of the collateral that is not already pledged to secure other loans. Indeed, that latter value is $0; there is no collateral not secured by prior deeds. In other words, Citibank's lien is wholly unsecured. This conclusion is compelled by § 506(a)'s plain language, which dictates that Citibank's lien "is a secured claim to the extent of the value of [its] interest in the estate's interest in [the] property." Debtors, however, have no equity in the property. The first two deeds of trust have "eaten up" all the value of that property. In this regard, "the amount of debt secured by senior liens must be deducted in determining the extent to which the creditor holds an interest in the estate's interest in the collateral and, hence, the extent to which the secured creditor holds a secured claim." 4 *Collier* ¶ 506.03[5][b], at 506–34. Here, if the amount of debt secured by liens senior to Citibank's lien (approximately $192,000) is deducted from the value of the collateral (approximately $183,000), it is apparent that the value of Citibank's interest in the collateral is zero. As such, Citibank's claim is not secured.

This conclusion is further supported by the second part of § 506(a), which states that an allowed claim "is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." As shown above, the value of Citibank's interest is zero, which is of course less than eleven thousand dollars, the amount of the claim. From this, too, it follows that the full extent of the value of Citibank's lien is an unsecured claim. *See In re Geyer*, 203 B.R. 726, 728 (Bankr.S.D.Cal.1996) ("Since the value of the first priority deed of trust exceeds the value of the Residence, the value of the estate's interest in the Residence is zero. [The junior creditor's] interest in the estate's interest can be no greater than zero. Under section 506(a), [the junior creditor] would not have an allowed secured claim."); *cf. In re Lam*, 211 B.R. at 40 ("If a lien has no 'security' interest in the property of a debtor, its status as a lien is questionable."). Several leading texts support this analysis and result. *See* 8 *Collier* ¶ 1322.06[1][a], at 1322–16 ("If the creditor had held a lien on property that had no value (perhaps because the property was fully encumbered by prior liens), then under this analysis it would not

---

for any reason other than payment on the debt," 502 U.S. at 418–19, 112 S.Ct. at 779. The Supreme Court also noted that were petitioner's approach accepted, stripping down a lien would redound to the benefit of a debtor whose property increased in value from the time of bankruptcy until the time of foreclosure: If the value of the lien were limited to the judicially determined value of the property at the time of filing a petition, then any increase in value after that time would not provide additional security to creditors, even though the benefit of this increased value is essentially part of the original bargain struck by mortgagor and mortgagee. *See* 502 U.S. at 417, 112 S.Ct. at 778.

**6.** "Stripping off" a lien occurs when the entire lien is avoided, whereas "stripping down" occurs when an undersecured lien is bifurcated and the unsecured portion is avoided. *See In re Lam*, 211 B.R. at 37 n. 2.

**7.** In this regard, it is worth noting that the Supreme Court stated in *Dewsnup* that its holding was limited to the facts presented and that its decision did not necessarily control situations not before it. *See* 502 U.S. at 416–17, 112 S.Ct. at 778 ("We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.").

have been a 'holder of a secured claim' ...."); Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.46, at 4–56 (2d ed.) (concluding that "a completely *unsecured* claim holder ... could not have an allowable secured claim under § 506(a)").[8] As Judge Doumar has aptly put it, "Where there is no value underlying the claim, there is not a secured claim, despite the existence of a document to the contrary."[9] In other words, "[t]he code does not generally classify creditors based on the existence of a piece of paper purporting to give a creditor rights in specified collateral, but rather on whether a creditor actually holds a claim supported by valuable estate property."[10] Thus, the second part of § 506(a) provides further support for the conclusion that Citibank's lien is unsecured.

Of course, it may be argued that the foregoing analysis is flawed because although Citibank's interest in the estate is currently zero, that may not always be the case: If the property were to appreciate in value such that the third lien again became at least partially secured,[11] *Dewsnup* and § 506(a) would compel a finding that the lien *is* se-cured. Yet this argument proves too much, for if accepted it would mean that no claim could ever be deemed unsecured under the second part of § 506(a), given that there is always some theoretical potential for the value of the collateral to increase.[12] To accept this argument, then, would be to nullify the statute's plain language.

Finally, the conclusion that the lien is unsecured is not inconsistent with *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which addressed the status of secured claims in a different context. *Nobelman* posed the question whether § 1322(b)(2) of the Bankruptcy Code[13] prohibits a debtor from reducing the value of an undersecured mortgage to the fair market value of the residence. The Supreme Court held that it does, understandably focusing more on § 1322(b)(2) than on § 506(a).[14] The key in *Nobelman* was that § 1322(b)(2) protects not only any "claim" the creditor may have, but also any "rights" it may have pursuant to the underlying mortgage contract. Because those rights are giv-

---

8. Although these comments were made in the context of a Chapter 13 plan and § 1322(b)(2), they apply with equal force in the context of Chapter 7 and § 506.

9. *Wright v. Commercial Credit Corp.*, 178 B.R. 703, 707 (E.D.Va.1995). As Judge Doumar further explained:

    Appellees argue that "secured claim" should be defined as a claim for which a lien exists to provide security. If that definition were used, any claim for which a lien exists, regardless of the value (or lack thereof) underlying that lien, would be considered secured. However, § 506(a) does not define the term "secured claim" in that manner.

10. *In re Hornes*, 160 B.R. 709, 715 (Bankr. D.Conn.1993). *But see In re Hornes*, 160 B.R. at 711–12 (suggesting that "the term 'secured claim' can be construed in [§ 506(d) to mean that] a claim is 'secured' if there is a lien which *purports* to provide security for the claim" (emphasis added) (citing *Dewsnup*, 502 U.S. at 418, 112 S.Ct. at 778–79; *Bellamy v. Fed. Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176, 183 (2d Cir.1992))).

11. In the instant circumstances, this result would obtain if the property were to appreciate by at least $9,000 (the amount by which, at the time the petition was filed, the value of the first two liens exceeded the value of the property). That is, if the property were to appreciate by only five percent by the time of foreclosure (a plausible possibility in typically volatile real estate markets), there would be sufficient collateral to secure both the two senior liens and Citibank's lien.

12. This argument also demonstrates why one cannot place too much reliance on the Supreme Court's statement in *Dewsnup* that it would not "freeze the creditor's secured interest at the judicially determined valuation," a statement that is arguably dictum. *See* 502 U.S. at 417, 112 S.Ct. at 778. If the status of various liens is not based, at least in part, on the judicially determined value, then no lien could ever be bifurcated under § 506(a) or avoided under § 506(d).

13. Section 1322(b)(2) allows a Chapter 13 debtor to modify the rights of a holder of a secured claim *unless the claim is secured only by a lien on the debtor's primary residence.*

14. It is curious that *Dewsnup* played so minimal a role in *Nobelman*, given that the two cases address similar issues, albeit in different contexts. This circumstance invites speculation either that the Supreme Court intended in *Nobelman* to limit the precedential force of *Dewsnup*, or simply that Justice Thomas, who took no part in the decision of *Dewsnup* and who authored *Nobelman*, did not agree with the holding of *Dewsnup*.

en by state law, the Supreme Court held that they should not be displaced by the Bankruptcy Code absent an indication to that effect by Congress. Thus, *Nobelman* held that the homestead mortgage could not be reduced, as doing so would modify the creditor's state law rights.

■ Although the Supreme Court observed in *Nobelman* that " § 506(a) itself uses the phrase 'claim ... secured by a lien' to encompass both portions of an *under* secured claim," 508 U.S. at 331, 113 S.Ct. at 2111 (emphasis added), that phrase cannot logically be understood to include a lien that has no secured portion. *Nobelman* concluded that "the bank [was] still the 'holder' of a 'secured claim,' because petitioners' home retain[ed] $23,500 of value as collateral." 508 U.S. at 329, 113 S.Ct. at 2110. Thus, a claim will be considered "secured" whenever the collateral retains any value not pledged to other creditors. In the instant case, however, the collateral has retained no value; the full value (and more) has been pledged to senior creditors. And a lien to which no collateral attaches is unsecured. *See In re Geyer*, 203 B.R. at 729 ("Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim [under § 506(a) ]."). Accordingly, several courts have held that "*Nobelman* does not apply when the claims held by creditors are completely unsecured by any value," as opposed to when they are merely undersecured. *See Wright*, 178 B.R. at 706–07.[15] The reasoning of these cases—that a claim that is wholly unsecured cannot be "secured" as that term is used in § 506(a)—distinguishes *Dewsnup* in the Chapter 7 context just as it distinguishes *Nobelman* in the

Chapter 13 context. *Cf. In re Geyer*, 203 B.R. at 728 (noting that *Dewsnup* "did not decide the result if the lien were determined to be completely unsecured under section 506(a)," and then voiding a totally unsecured lien).

### B. *The Lien is Void Under § 506(d)*

■ It is evident from the cases cited and the statutory language that the Code treats undersecured and unsecured liens differently. Because Citibank's lien is wholly unsecured, by definition it cannot be an "allowed secured claim." From this it inexorably follows that the lien is void. *See* § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ....").

Precisely this same conclusion was reached by the bankruptcy court in *Howard v. National Westminister Bank (In re Howard)*, 184 B.R. 644 (Bankr.E.D.N.Y.1995). There, the plaintiff and his wife filed a joint petition under Chapter 7. The debtors owned property that was valued at $250,000. At the time of the filing, however, there was a first mortgage on the residence whose principal sum had risen to $302,000.[16] Accordingly, the bankruptcy court found that the debtors had no equity in the property. *See* 184 B.R. at 645. The defendant in *Howard* held a judgment lien against the plaintiff in the amount of $35,000. Given that the amount of the mortgage exceeded the value of the property, the *Howard* court found the judgment lien to be "wholly unsecured." *See* 184 B.R. at 645. As such, the lien was avoided under § 506(d). *See* 184 B.R. at 647.

In voiding the lien, the *Howard* court first reasoned that *Dewsnup* did not foreclose it

---

**15.** Although *Wright* was a Chapter 13 case and not a Chapter 7 case, its holding, that a claim that does not attach to any value is not a secured claim, applies equally in both contexts. *See* 11 U.S.C. § 103(a) (stating that general provisions of Chapters 1, 3, and 5 apply to cases under Chapters 7, 11, 12, and 13).

For other cases invoking the same reasoning as that followed in *Wright*, see, for example, *In re Williams*, 166 B.R. 615, 618 (Bankr.E.D.Va. 1994) (finding that *Nobelman* does not apply to a nonconsensual, wholly unsecured lien); *In re Lee*, 161 B.R. 271, 273 (Bankr.W.D.Okla.1993) (stating that when debtors owe more on first

mortgage than fair market value of property, junior mortgagee is wholly unsecured); *In re Williams*, 161 B.R. 27, 29–30 (Bankr.E.D.Ky. 1993) (holding that bank had unsecured claim because estate had no interest in property whose complete value was pledged to other lenders); *In re Hornes*, 160 B.R. at 711–12 (stating that a lien is secured only if unpledged collateral remains after valuing collateral and subtracting the value of superior liens).

**16.** The mortgage was originally for $261,000, but arrears and related charges caused the amount of principal to increase.

from stripping off the judicial lien because the lien was nonconsensual. Thus, the policy of respecting the bargain struck by the mortgagor and mortgagee, emphasized by the Supreme Court in *Dewsnup*, played no role in *Howard;* there was no "bargain" between the judgment creditor and judgment debtor. Indeed, noted the *Howard* court, "[u]nlike a mortgagee, a judgment creditor takes its chances when attempting to secure the judgment." 184 B.R. at 647. The bankruptcy court in the instant case found this distinction between consensual and nonconsensual liens to be crucial, and thus distinguished *Howard* on its facts, given that here the lien debtors seek to avoid is consensual (it is a home equity loan). Yet, the nonconsensual nature of the lien in *Howard* was not essential to the bankruptcy court's holding. In concluding that the lien was void, the *Howard* court also stated that "[w]here the collateral has no equity remaining to which the lien can attach ... the Defendant [is] wholly unsecured." 184 B.R. at 647; *see id.* ("[I]f there is no property to secure the debt then the judgment remains unsecured."). And a lien that is wholly unsecured can be avoided under § 506(d).[17]

This conclusion invites attack on three grounds, all of which miss the mark. First, it contravenes two bankruptcy law policies recognized by the Supreme Court in *Dewsnup*. The first is that "the creditor's lien stays with the real property until the foreclosure." 502 U.S. at 417, 112 S.Ct. at 778. The second policy justification noted in *Dewsnup* is that liens are to "pass through

bankruptcy unaffected." 502 U.S. at 417, 112 S.Ct. at 778. If invocation of either of these policies were sufficient to compel a contrary conclusion,[18] however, § 506(d) would be read out of the statute; a lien would *never* be avoided, even if the full value of the lien exceeded the unsecured value of the property. Section 506 clearly contemplates that some liens—those that are unsecured—will not "stay[ ] with the real property until the foreclosure" and will not "pass through bankruptcy unaffected"; they will be avoided. In other words, the statute itself limits the influence that these policies otherwise might have.

The second attack that misses the mark is that because appraisal is an inexact process, the determination of a lien's status as secured or unsecured should not depend on the inherently imprecise valuation affixed by the bankruptcy court. Under the instant analysis, the argument goes, the distinction between a secured and unsecured lien can hinge on one dollar. Consider, for example, the case in which the value of the senior lien and the value of the property are exactly the same. In such a case, the junior lien would, just barely, be unsecured—though this would not be the case if the value of the senior lien had been one dollar lower, or if the valuation of the property had been one dollar higher.[19] While this is true, it is not a reason for failing to give § 506(d) its plain meaning. Indeed, this is the result of a bankruptcy system and commercial context in which all parties are aware of the integral role that

---

17. *See In re Hornes,* 160 B.R. at 714, 719–20 (holding that third lien was unsecured when value of first two liens exceeded value of property, and thus that third lien could be modified and avoided); *In re Kidd,* 161 B.R. 769, 770 (Bankr. E.D.N.C.1993) (avoiding junior lien under § 506(d) when senior lien exceeded value of residence).

18. The contrary conclusion, of course, would be that even wholly unsecured claims cannot be avoided under § 506(d).

19. Far from being a hypothetical borne of a law professor's fertile imagination, however, these were the facts in *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn.1993). In that case, the unpaid balance of the debtor's first mortgage was $136,-000, and the property was also valued at $136,-

000. The court therefore ruled that the value of the junior creditor's " 'interest in the estate's interest in such property' is zero," and thus that the claim was unsecured. *See* 157 B.R. at 199. Of course, if the unpaid balance of the mortgage had been one dollar lower, or if the valuation of the property had been one dollar higher, a different result would have obtained; the lien would have been secured under *Dewsnup*.

The argument here, it should be noted, subtly differs from the argument above positing the potential for an appreciation of the property. That argument suggested that the potential for fluctuation of the property's value over time should prevent a lien from being deemed unsecured. The instant argument, by contrast, suggests that even once a fixed valuation is established, that valuation should not provide the basis for declaring a lien void.

valuation plays, *see In re Hornes,* 160 B.R. at 716, and of the inherent necessity for line-drawing. Moreover, any lack of confidence in the valuation reached here stems from the creditor's own failure to appear and challenge the valuation of the property offered by debtors. *See In re Geyer,* 203 B.R. at 728 (holding that debtors' valuation of property would be accepted when no other evidence of residence's value was adduced and there was no reason to doubt veracity of debtors' valuation). Any harm to Citibank in the instant case resulting from the judicially determined valuation, then, is a self-inflicted wound.

The third attack on the conclusion reached here finds root in the legislative history of § 506(d). According to the leading commentator in the field, permitting stripping off under § 506(d) is contrary to Congress's intent in enacting that section. *See 4 Collier* ¶ 506.06[1][a], at 506–146 to –147 (asserting that whether lien is voided under § 506(d) depends on whether lien is allowed or disallowed, not on whether it is undersecured or unsecured). Yet, to adopt this interpretation of the statute would require courts to ignore that the term "secured" is used in § 506(d). Because that section's plain language mandates avoidance of liens that are not secured, and because Citibank's lien is wholly unsecured, the lien is void.

## V

One further point merits attention. The avoidance of a wholly unsecured lien under § 506(d) may be argued to constitute a governmental taking of the creditor's property without just compensation in violation of the Fifth Amendment's Takings Clause. *Cf. 4 Collier* ¶ 506.06[1][a], at 506–147 (suggesting that *Dewsnup*'s holding prohibiting the stripping-down of certain liens allowed the Supreme Court to avoid this takings problem). The principal support for such an argument is *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), in which the Supreme Court found the Frazier–Lemke Act unconstitutional. The Frazier–Lemke Act was a depres-

sion-era farmer's debt relief statute that granted farmers a five-year foreclosure moratorium and allowed them to redeem their farms from creditor-banks at the appraised value of the property, which was often less than the amount of secured debt. *Radford* held that these provisions took certain valuable property rights from the creditors without just compensation and thus violated the Fifth Amendment. *See* 295 U.S. at 601–02, 55 S.Ct. at 868–69.

■ Yet *Radford,* whatever its relevance here, has been all but overruled by *Wright v. Vinton Branch of Mountain Trust Bank,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937) (finding constitutional the second Frazier–Lemke Act, which was almost identical to the Act invalidated in *Radford*). *See also Helvering v. Griffiths,* 318 U.S. 371, 401 n. 52, 63 S.Ct. 636, 652 n. 52, 87 L.Ed. 843 (1943) (stating that in *Vinton Branch* the Supreme Court reexamined and corrected the "error" of *Radford*); *In re A.V.B.I., Inc.,* 143 B.R. 738, 746 (Bankr.C.D.Cal.1992) (noting that "by the 1970s [*Radford*] had fallen into disrepute[, was] severely undercut by subsequent cases, [and] was of doubtful continued vitality"). Cases discussing the demise of *Radford* correctly teach that lien avoidance under the federal bankruptcy power "does not come within the traditional definitions of taking under the Fifth Amendment." *Pillow v. Avco Fin. Servs. (In re Pillow),* 8 B.R. 404, 411 (Bankr.D.Utah 1981).[20] Indeed, "[b]ankruptcy proceedings constantly modify and affect the property rights established by state law." *Wright v. Union Cent. Life Ins. Co.,* 304 U.S. 502, 517, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938). Thus, the Fifth Amendment protects a creditor's rights only to the extent of its interest in the collateral as that interest is defined by the bankruptcy laws. *See Travelers Ins. Co. v. Bullington,* 878 F.2d 354, 359 (11th Cir. 1989) (citing *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 278, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940)). When, as here, the creditor has no interest in the collateral,

---

**20.** *Pillow* addressed the constitutionality of the lien-voiding provision of § 522(f). The case provides a well-reasoned and thorough analysis of the proper resolution of Fifth Amendment challenges to avoidance statutes in light of *Radford.*

it cannot claim any protection under the Fifth Amendment.

*Radford*'s oft-quoted statement that "[t]he bankruptcy power ... is subject to the Fifth Amendment," 295 U.S. at 589, 55 S.Ct. at 863, then, "must be taken to mean nothing more than that the fifth amendment, through either the due process clause or the takings clause, is the constitutional foundation for the proposition that statutes that retroactively disrupt settled expectation may be subject to particularly attentive judicial scrutiny." [21] In this regard, it cannot be gainsaid that § 506 has been subject to particularly "attentive judicial scrutiny"; the legion of cases in the federal reporters analyzing, discussing, and applying this provision attest to that. Moreover, application of § 506(d) to Citibank's lien does not even amount to retroactive application of that section; § 506(d) was enacted prior to the time at which Citibank's lien attached. Thus, there can be no argument that Citibank had any rights greater than those provided by § 506.

In sum, to hold that avoidance of a lien under § 506(d) violates the Fifth Amendment, either on takings or due process grounds, would "call[ ] into question the entire history of lien avoidance in bankruptcy as well as the entire framework of the Code. The fact that due process and lien avoidance have coexisted since the Sixteenth Century, with the momentary aberration of *Radford*, requires the conclusion that [§ 506(d) ] [22] does not offend [the Fifth Amendment]." *In re Pillow*, 8 B.R. at 424.[23]

## VI

Because the value of the first two liens exceeds the value of the property, debtors have no equity in their property. It follows that there is no security for Citibank's lien, and thus that this lien is not an "allowed

secured claim" under § 506(a); it is unsecured. Such a lien may be avoided under § 506(d). Moreover, avoidance of this lien does not constitute an impermissible taking under the Fifth Amendment.

For these reasons, the bankruptcy court's dismissal of the claim must be reversed. Furthermore, default and default judgment must be entered in favor of plaintiff, and Citibank's lien must be declared void.

An appropriate Order will issue.

---

**21.** James Steven Rogers, *The Impairment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause*, 96 Harv. L.Rev. 973, 985 (1983), *cited in Travelers*, 878 F.2d at 359 n. 6.

**22.** Again, *Pillow* involved the lien-voiding provision of § 522(f), but its reasoning carries equal force in the § 506(d) context.

**23.** Were the Court to have reached an opposite conclusion, namely, that § 506(d), as applied here, is unconstitutional, it would have certified the issue to the Attorney General and requested briefs on the constitutionality of the statute. *See* 28 U.S.C. § 2403(a).