In re Kevin H. CONCANNON and Terry B. Concannon, Debtors.

Kevin H. Concannon; Terry B. Concannon, Appellants,

v.

Imperial Capital Bank, a California corporation, Appellee.

BAP No. AZ–05–1169CMoS.
Bankruptcy No. 01–04624–TUC–JMM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 20, 2006.

Filed Feb. 7, 2006.

Scott D. Gibson, Gibson, Nakamura & Decker, P.L.L.C., Tucson, AZ, for Kevin H. Concannon and Terry B. Concannon.

George O. Krauja, Michael L. Walker, Fennemore Craig, P.C., Tucson, AZ, and John M. Samburg, Dennette A. Mulvaney, Bisno, Samburg & Mulvaney, LLP, Woodland Hills, CA, for Imperial Capital Bank.

Before CARROLL [1], MONTALI and SMITH, Bankruptcy Judges.

## OPINION

CARROLL, Bankruptcy Judge.

### INTRODUCTION

When Imperial Capital Bank ("Imperial") sought relief from the automatic stay to foreclose its judgment lien, Kevin and Terry Concannon ("Debtors") defended the motion in their chapter 7 bankruptcy case by seeking a valuation of their rental real property encumbered by the lien and avoidance of Imperial's lien pursuant to 11 U.S.C. §§ 506(a) and (d).[2] The bankruptcy court granted Imperial's motion and lifted the stay, but in so doing, valued Imperial's secured claim at zero pursuant to § 506. At Imperial's request, the bankruptcy court then amended its decision by deleting its valuation of Imperial's secured claim and ruling that Imperial's lien would pass through bankruptcy unimpaired. Debtors timely appealed.

We affirm.

### FACTS

On January 2, 1997, The Manning House, L.L.C., an Arizona Limited Liability Company ("Manning House") executed a promissory note to Imperial in the original principal sum of $1,880,000 ("Note"). As part of the transaction, Debtors each signed a Continuing Guaranty of Payment and Performance dated January 2, 1997 (collectively, "Guaranties"), guaranteeing payment of the Manning House Note and any subsequent loan advances made by Imperial to Manning House. On November 6, 1997, Manning House obtained an additional advance of funds from Imperial in the amount of $385,000 ("Additional Advance").

On September 11, 1998, Manning House filed a voluntary chapter 11 petition in Case No. 98–03968–TUC–LO, styled *In re Manning House, L.L.C., Debtor*, in the United States Bankruptcy Court, District of Arizona, Tucson Division.[3] Shortly thereafter, Imperial demanded payment by Debtors of the Manning House Note and Additional Advance. When Debtors defaulted under their Guaranties, Imperial commenced an action in the Superior Court of Arizona, County of Pima, to enforce the Guaranties and caused a writ of attachment to be levied by the Pima County Sheriff on certain rental real property owned by the Debtors located in Tucson, Arizona ("Farr Property"). Thereafter, Imperial obtained a judgment against the Debtors in the amount of $2,472,371.23, and recorded its judgment with the Pima County Recorder's Office on April 12, 2001.

On October 17, 2001, Debtors filed their voluntary petition for liquidation under

---

1. Honorable Peter H. Carroll, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the unamended Bankruptcy Code, 11 U.S.C. §§ 101–1330, in effect when this case was filed, and prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Rule references are to the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr.P.), Rules 1001–9036.

3. The Manning House bankruptcy case was later transferred to the United States Bankruptcy Court, District of Arizona, Phoenix Division.

chapter 7 of the Code. Debtors did not claim an exemption in the Farr Property,[4] and received a discharge on March 5, 2002. On August 4, 2004, Imperial filed a Motion for Relief from Automatic Stay ("Motion") seeking authority to exercise its state law execution remedies against the Farr Property to collect its judgment. On November 8, 2004, the bankruptcy court commenced a hearing on Imperial's Motion, but converted the matter to an adversary proceeding for the purpose of determining the validity, extent and priority of Imperial's lien on the Farr Property. Fed. R. Bankr.P. 7001(2). Besides Imperial's judgment lien, the Farr Property was further encumbered by (1) a deed of trust in favor of Western Financial Bank in the amount of $131,250 recorded January 5, 1999; (2) a lien in the amount of $28,250 in favor of Donald L. Vath, recorded February 3, 1999; (3) a judgment lien in the amount of $8,864 in favor of Ralph Raub, recorded May 16, 2001, and (4) another judgment lien in the amount of $417, recorded June 15, 2001.

On January 11, 2005, the bankruptcy court conducted an evidentiary hearing on the validity, extent, and priority of Imperial's lien. At the conclusion of the hearing, Imperial was granted leave to file a supplemental brief on the issue of whether it was entitled as a judgment creditor to foreclose on the Farr Property. Imperial's supplemental brief was filed on January 18, 2005.

On January 24, 2005, the bankruptcy court issued a Memorandum Decision ("Memorandum") granting Imperial's Motion, lifting the stay, and valuing Imperial's secured claim at zero pursuant to § 506. In so holding, the court determined that the

Farr Property had a value of $159,825, but that Imperial's lien was junior to senior liens totaling $168,364. Based on § 506, the court concluded that Imperial's secured claim as to the Farr Property was wholly unsecured.

On January 31, 2005, Imperial filed a Motion to Alter or Amend the Court's Memorandum Decision Dated 1/24/05 ("Motion to Amend") arguing that the valuation of liens under § 506 is not permitted in chapter 7 cases. On February 11, 2005, Debtors filed a response in opposition to Imperial's Motion to Amend asserting that Imperial had "offered nothing new to justify altering or amending" the court's earlier ruling. After a hearing on February 18, 2005, the bankruptcy court issued an Order on April 8, 2005, granting Imperial's Motion to Amend. In its Order, the court declined to change that portion of its Memorandum lifting the automatic stay, but deleted from its Memorandum any discussion of the valuation of Imperial's lien, stating that "Imperial's secured lien will pass through bankruptcy unaffected."

## ISSUE

Whether the bankruptcy court erred in its determination that § 506(d) cannot be used by a chapter 7 debtor to strip off a wholly unsecured nonconsensual lien.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1), and (b)(2)(A), (B), (G) and (K). We have jurisdiction under 28 U.S.C. § 158(c)(1).

---

4. Because a homestead exemption was not claimed in the Farr Property, Debtors have not alleged that Imperial's nonconsensual judgment lien should be avoided under § 522(f)(1) to the extent that it impairs an exemption to which they are entitled under § 522(b).

## STANDARD OF REVIEW

■] Whether § 506(d) can be used by a chapter 7 debtor to strip off a wholly unsecured nonconsensual lien is a question of law. Therefore, we review the bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*. *Bunyan v. United States (In re Bunyan)*, 354 F.3d 1149, 1150 (9th Cir.2004); *Tanzi v. Comerica Bank–California (In re Tanzi)*, 297 B.R. 607, 610 (9th Cir. BAP 2003).

## DISCUSSION

■] Section 506 of the Bankruptcy Code[5] governs the determination and treatment of secured claims in bankruptcy cases. *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 822 (9th Cir. BAP 2002). Because a claim is secured only by the value of the property to which the lien is attached, an undersecured claim may be bifurcated under § 506(a), leaving a creditor with a secured claim to the extent of the value of the collateral and an unsecured claim as to the deficiency. *See, e.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that § 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured"); *Shook*, 278 B.R. at 822 (observing that § 506(a) permits "bifurcation of an allowed claim into its secured and unsecured components according to the value of the collateral").

■] Prior to *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), there was a split among the circuits on the issue of whether a chapter 7 debtor could use § 506(d) to "strip down"[6] an undersecured mortgage lien to a value judicially determined under § 506(a). *Compare Gaglia v. First Fed. Sav. & Loan Ass'n*, 889 F.2d 1304, 1308 (3d Cir.1990), *Folendore v. U.S. Small Business Admin. (In re Folendore)*, 862 F.2d 1537, 1539 (11th Cir.1989), *and Lindsey v. Fed. Land Bank of St. Louis (In re Lindsey)*, 823 F.2d 189, 191 (7th Cir.1987) (recognizing a chapter 7 debtor's ability to void liens under § 506(d)), *with Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 593 (10th Cir. 1990), *aff'd*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (opining that lien avoidance under § 506(d) "gives debtors much more than the 'fresh start' to which they are entitled"). In *Dewsnup*, the United States Supreme Court held that a chapter 7 debtor may not invoke § 506(d) to "strip down" an undersecured mortgage

---

**5.** Section 506 provides, in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
  (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
  (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(a) & (d).

**6.** The term "strip down" is used where the inferior mortgage is partially secured whereas "strip off" is used where the junior mortgage is totally unsecured. *In re Fitzmaurice*, 248 B.R. 356, 357 n. 2 (Bankr.W.D.Mo.2000).

to the value of the collateral determined under § 506(a), stating:

> [W]e hold that § 506(d) does not allow petitioner to "strip down" respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502.

502 U.S. at 417, 112 S.Ct. 773. The Supreme Court reasoned that liens pass through bankruptcy unaffected, and that mortgagees and mortgagors bargain for a consensual lien which stays with the real property until foreclosure, resulting in the creditor benefitting from any increase in the value of the property. *Id.* In so holding, the court stated:

> We think ... that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

*Id.*[7]

■■ In *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R. 872 (9th Cir. BAP 1998), we found *Dewsnup's* reasoning equally applicable in cases where debtors seek to strip off *wholly* unsecured consensual liens, stating that:

> *Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d). Absent either a disposition of the putative collateral or valuation of the secured claim for plan confirmation in Chapter 11, 12 or 13, there is simply no basis on which to avoid a lien under § 506(d).

*Id.* at 876.[8] *Cf. Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1222

---

7. In prohibiting lien stripping in chapter 7 cases, the Supreme Court in *Dewsnup* made no distinction between consensual and nonconsensual liens. 502 U.S. at 417, 112 S.Ct. 773 (stating that "we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected"). The court also explained that such a prohibition was consistent with established practice prior to enactment of the Code, stating:

> Apart from reorganization proceedings, no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt.... Congress must have enacted the Code with a full understanding of this practice. When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history. Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.

*Id.* at 418–20, 112 S.Ct. 773 (citations omitted).

8. The Ninth Circuit later observed in *Enewally v. Washington Mut. Bank (In re Enewally)*:

> The rationales advanced in the *Dewsnup* opinion for prohibiting lien stripping in Chapter 7 bankruptcies, however, have little relevance in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12 and 13, where lien stripping is expressly

(9th Cir.2002) (holding that a wholly unsecured lien on debtor's primary residence is not protected by the antimodification clause of § 1322(b)(2) and may be avoided in a chapter 13 case). We expressly declined to follow *Yi v. Citibank (Md.), N.A. (In re Yi)*, 219 B.R. 394 (E.D.Va.1998) and *Howard v. Nat'l Westminster Bank (In re Howard)*, 184 B.R. 644 (Bankr.E.D.N.Y. 1995) cited by Debtors, noting that:

> In neither *Howard* nor *Yi* does the court indicate whether there was any prior claim allowance proceeding. Both conclude that, since there was no equity to which the lien in question could attach and there could be no secured claim under § 506(a), the lien could therefore be avoided under § 506(d). With all respect to those courts, we think that analysis reverses the statutory process.

*Laskin*, 222 B.R. at 876. As we stated in *Laskin*, "[s]ection 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a chapter 7 debtor." *Id.* at 876 (citing *Oregon v. Lange (In re Lange)*, 120 B.R. 132, 135 (9th Cir. BAP 1990)); *see Shook*, 278 B.R. at 822. We are bound by our prior decision in *Laskin*. *See, e.g., Salomon N. Am. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005) (stating that "we regard ourselves as bound by our prior decisions"); *Ball v. Payco–Gen. Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995) (stating that "[w]e will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings").

Since *Dewsnup*, lien stripping has not been permitted in chapter 7 cases. *Enewally*, 368 F.3d at 1169. *See, e.g., Talbert v. City Mortgage Servs. (In re Talbert)*, 344 F.3d 555, 562 (6th Cir.2003) (concluding that "a Chapter 7 debtor may not use 11 U.S.C. § 506 to 'strip off' an allowed junior lien where the senior lien exceeds the fair market value of the real property"); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 783 (4th Cir.2001) (holding that "an allowed unsecured consensual lien may not be stripped off in a Chapter 7 proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d)").

■ Debtors attempt to distinguish *Laskin* by arguing that *Dewsnup* and its progeny apply only to *consensual* liens. Debtors reason that Imperial's wholly unsecured judgment lien may be stripped off simply because it is *nonconsensual*. This is a distinction without a difference.

Lien stripping in chapter 7 cases is inconsistent with the purpose and policy of § 506 which, as we observed in *Laskin*, was "to facilitate valuation and disposition of property in the reorganization chapters of the Code." *Laskin*, 222 B.R. at 876. Furthermore, the majority of courts addressing this issue have applied *Dewsnup* to both consensual and nonconsensual liens in chapter 7 bankruptcy cases. *See, e.g., Boring v. Promistar Bank*, 312 B.R. 789, 797 (W.D.Pa.2004) (citing *Laskin* and holding § 506(d) may not be used in chapter 7 to strip off an allowed judicial lien); *Crossroads of Hillsville v. Payne*, 179 B.R. 486, 491 (W.D.Va.1995) (holding that *Dewsnup's* prohibition against lien stripping

and broadly permitted, subject only to very minor qualifications. The legislative history of the Code makes clear that lien stripping is permitted in the reorganization chapters.

368 F.3d 1165, 1170 (9th Cir.2004), citing *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 291 n. 21 (5th Cir. 2000) (quoting Jane Kaufman Winn, *Lien Stripping After Nobleman*, 27 Loy. L.A. L. Rev. 541, 554–55 (1994)).

barred a chapter 7 debtor from avoiding a wholly unsecured judgment lien under § 506(d)); *Warner v. United States (In re Warner)*, 146 B.R. 253, 256 (N.D.Cal.1992) (reversing a bankruptcy court's decision permitting a chapter 7 debtor to strip down an undersecured federal tax lien under § 506(d)); *Swiatek v. Pagliaro (In re Swiatek)*, 231 B.R. 26, 29 (Bankr.D.Del. 1999) (holding that *Dewsnup* applied to prohibit the avoidance of nonconsensual liens, and observing that "[t]he *in rem* aspect of a judgment is equally as viable in the context of a nonconsensual lien as in that of a consensual one"); *Esler v. Orix Credit Alliance (In re Esler)*, 165 B.R. 583, 584 (Bankr.D.Md.1994) (observing that *Dewsnup* "is equally applicable to consensual and non-consensual liens"); *In re Doviak*, 161 B.R. 379, 381 (Bankr.E.D.Tex. 1993) (rejecting debtors' argument that *Dewsnup* applies only to consensual liens, and denying debtors' motion to strip down an undersecured federal tax lien); *Rombach v. United States (In re Rombach)*, 159 B.R. 311, 314 . (Bankr.C.D.Cal.1993) (concluding that *Dewsnup* prohibits debtors "from stripping down the undersecured portion of a non-consensual lien"). *See generally* 4 Collier on Bankruptcy ¶ 506.06[1][b], at 506–147 (15th ed. rev. 2005).

Debtors point to *Warthen v. Smith (In re Smith)*, 247 B.R. 191 (W.D.Va.2000), *aff'd*, 243 F.3d 540 (4th Cir.2001) (mem.), *cert. denied*, 532 U.S. 1052, 121 S.Ct. 2194, 149 L.Ed.2d 1025 (2001), claiming that the stripping of nonconsensual liens in chapter 7 cases is permissible in the Fourth Circuit. However, the *Smith* decision turned on the value of the collateral at issue in the case, not the nature of the lien sought to be avoided.[9] More importantly, the district court in *Smith* based its interpretation of § 506(d) on the reasoning of *Howard* and *Yi*, which were rejected by this court. *Id.* at 195–96. Although *Smith* was affirmed without an opinion, the Fourth Circuit in *Ryan* later that year not only declined to follow *Smith*, but effectively abrogated the decision by embracing this court's reasoning in *Laskin* and specifically holding that an allowed unsecured consensual junior lien may not be stripped off in a chapter 7 case pursuant to § 506(a) and (d), stating:

> We are aware ... that some courts are not in agreement with this analysis of *Dewsnup*. *See Yi v. Citibank*, 219 B.R. 394, 397 (E.D.Va.1998) (Chapter 7 debtor's proceeding—"Because Citibank's lien is wholly unsecured, by definition it cannot be an 'allowed secured claim.' From this it inexorably follows that the lien is void." (citing *Howard*, 184 B.R. at 644)); *In re Smith*, 247 B.R. 191 (W.D.Va.2000); *Farha v. First American Title Ins.*, 246 B.R. 547, 549 (Bankr.E.D.Mich.2000) (where claim is unsecured rather than undersecured "there is no allowed secured claim under § 506(a)"); *Zempel v. Household Finance Corp.*, 244 B.R. 625 (Bankr. W.D.Ky.1999) (same).
>
> Other courts have concluded, *as do we*, that a Chapter 7 debtor may not use § 506(d) to strip off an allowed, wholly unsecured consensual junior lien from real property.

253 F.3d at 782–83 (emphasis added).

Finally, *Hoekstra v. United States (In re Hoekstra)*, 255 B.R. 285 (E.D.Va.2000) cit-

---

**9.** Indeed, the *Smith* court observed that "[t]he precedent in the Western District is to apply the *Dewsnup* holding to both consensual and non-consensual liens." 247 B.R. at 195. Construing *Dewsnup* as prohibiting only the stripping down of undersecured liens, the district court in *Smith* affirmed a bankruptcy court's decision permitting a chapter 7 debtor to strip off a wholly unsecured judgment lien against his one-half interest in certain nonexempt real property. *Id.* at 196.

ed by Debtors is neither dispositive nor controlling. In that case, the district court reversed the bankruptcy court's decision based on *Yi* authorizing a chapter 7 debtor to strip off a wholly unsecured tax lien, noting the *"Dewsnup* Court's clear prohibition against 'stripping down' liens." *Id.* at 292. Under no circumstances do either *Smith* or *Hoekstra* compel us to conclude that *Dewsnup* is inapplicable where the lien sought to be avoided in chapter 7 is nonconsensual. To the extent *Smith* has any remaining precedential value, it is not binding on this court.

### CONCLUSION

Not only have the authorities cited by Debtors either been rejected by this court or essentially overruled, but the majority of cases addressing this issue support the conclusion that *Dewsnup* prohibits the stripping of both consensual and nonconsensual liens in chapter 7 cases. It is undisputed that Imperial's claim is allowed pursuant to § 502 and is secured by a judgment lien against the Farr Property. Imperial's lien does not impair an exemption to which the Debtors are entitled under § 522(b). Whether or not the value of the Farr Property is sufficient to cover Imperial's claim, *Dewsnup* prohibits Debtors from utilizing § 506(a) and (d) to strip off Imperial's judgment lien. The bankruptcy court did not err in determining that § 506(d) cannot be used by a chapter 7 debtor to strip off a wholly unsecured nonconsensual lien. Accordingly, the bankruptcy court's order granting Imperial's motion to revise its Memorandum, deleting the valuation of the Farr Property and permitting Imperial's judgment lien to pass through bankruptcy unaffected is **AFFIRMED.**

