Orange O'MALLEY, Plaintiff/Appellee,

v.

RAPIDAN RIVER FARM,
Defendant/Appellant.

Civ. A. No. 82–574–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 4, 1982.

Beril M. Abraham, Virginia Beach, Va., for plaintiff/appellee.

Joseph R. Mayes, Kaufman & Canoles, Norfolk, Va., for defendant/appellant.

## MEMORANDUM ORDER

KELLAM, Senior District Judge.

This case came on appeal to the United States District Court from an Order of the United States Bankruptcy Court for the Eastern District of Virginia entered on July 14, 1982, ordering Appellant Rapidan River Farm (Rapidan) to release into the possession of Appellee Orange O'Malley three horses in which Rapidan claimed a statutory liveryman's lien. The facts are summarized here. Appellee is the owner of two horses and lessee of a third horse. On June 27, 1981, O'Malley placed all three horses in the possession of Appellant Rapidan, a farm engaged in the business of keeping, raising and training horses. The horses remained in Rapidan's possession until Appellant's motion for stay of judgment order of July 14, 1982 was denied by the Bankruptcy Court on July 27, 1982. Appellee's livery accounts with Rapidan totalled $8,324.00 by the end of March, 1982, at which time Rapidan made demand for payment. Having received no payment from O'Malley, Rapidan sought to enforce its livery stable keeper's lien upon the horses for payment due as provided by Va.Code §§ 43–32 and 43–34. On April 21, 1982, O'Malley filed her homestead deed in the Circuit Court for the city of Suffolk pursuant to Virginia Code § 34–4, thereby purporting to exempt all three horses in Rapidan's possession and valuing each at $1,000.00. On April 22, 1982, O'Malley filed her petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for this district. On May 12, 1982, O'Malley filed a complaint against Rapidan in the Bankruptcy Court to recover possession of the horses. Rapidan responded by denying O'Malley's right to recover possession and counterclaimed for payment under its asserted stable keeper's

lien while praying for relief from O'Malley's automatic stay instituted pursuant to 11 U.S.C. § 362. The Bankruptcy Court issued its Judgment Order adverse to Rapidan on July 14, 1982, whereupon Rapidan filed notice of appeal and moved for stay of judgment. By Order of August 10, 1982, the Bankruptcy Court denied Rapidan's motion for stay of judgment and ordered Rapidan to release the horses into O'Malley's possession. The final amount owing to Rapidan for the care of the three horses totalled $10,597.00, none of which has been paid.

■ Appellant assigns as error and presents for review here the Bankruptcy Court's ruling that, in keeping with Congressional intent to provide sufficient protection for the bankrupt, Rapidan's possessory lien does not arise solely by operation of law but is more properly characterized, on these facts, as being judicially created and therefore subordinate to O'Malley's homestead exemption. With this ruling we cannot agree.

In its brief on appeal, Appellee argues that O'Malley's homestead exemption rights in the horses in question are paramount to any lien interest in the horses asserted by Rapidan. Specifically, Appellee maintains that where Virginia law permits a householder to claim a homestead exemption in real and personal property to be selected by him upon filing his homestead deed, the General Assembly of Virginia has nevertheless definitively set forth those limited categories of debts to which the aforementioned exemption shall not apply. Because Rapidan, according to Appellee, does not claim relief under any category of debt which § 34–5 protects from homestead exemption, Rapidan's asserted interest in Appellee's horses must fall. In the same vein, Appellee urges the Court to conclude that, because § 34–5 enumerates those forms of debts not subject to homestead exemption and Rapidan's asserted livery stable keeper's lien claimed under Va.Code § 43–32 is not among them, Appellee's homestead exemption regarding the three horses is not subject to the lien and must therefore prevail. Appellee's premise that § 34–5 exhaustively sets forth creditors' rights in the context of homestead exemption is flawed; Appellant Rapidan's right to protection as a possessory lienholder arises separately and distinctly from the provisions of § 34–5 but cannot be viewed as any less valid in the absence of specific statutory guidance to the contrary.

Both parties draw upon the case of *In re Epperley,* 4 B.R. 124 (Bkrtcy.W.D.Va.1980) in order to enlighten the Court regarding the disposition of a conflict, such as ours, arising between the rights of a homestead-debtor and a possessory lienholder. In *Epperley,* the debtor sought an order from the Bankruptcy Court holding that debtor's homestead deed was paramount to defendant garageman's possessory lien for repairs of an auto. The *Epperley* Court initially noted that Va.Code § 34–5(2) excludes "services rendered by a laboring person or mechanic" from the force and effect of debtor's § 34–4 homestead exemption rights but refused to so characterize defendant's claim because of the "serious dispute as to whether or not the defendant t/a 'Woodyard Auto Repair Shop' is a 'laboring person or mechanic' within the intent and purview of § 34–5." *Epperley, supra,* at 126. Instead, the *Epperley* Court went on to consider the independent source and nature of protection afforded various Virginia businesses by virtue of the possessory lien provisions found throughout Va.Code §§ 43–31 to 43–33. The legislative purpose underlying these statutorily-granted possessory liens, according to the Court, was to protect the interests of one "who adds his services and materials to the property of another, thus enhancing its value." *Id.* at 127. Framing the conflict as one between the unrelated statutory schemes of homestead exemption and possessory liens, the *Epperley* Court fixed the status of each of the foregoing measures as each relates, respectively, to a title lien upon a motor vehicle as a means of determining which interest, in this case, shall prevail. Observing that such a title lien enjoys superiority over a homestead exemption and that § 43–32 explicitly provides a garageman with an

interest superior to a title lien, albeit to the extent limited therein, the Court concluded that the possessory lien at issue likewise prevails over any asserted homestead exemption. *Id.* at 127. As final support for its conclusion, the Court noted that the reach of the lien thus declared superior was properly limited to the recovery for that enhanced value which, but for the lienholder's efforts, would not have enured to the debtor's benefit, and thus "... in equity, does not diminish the value of the exemption otherwise claimed." *Id.* at 127.

On our set of facts, we find no reason to depart from the result set out in *Epperley.* Appellee adduces no authority to counter, as it purports to do, the *Epperley* Court's ruling regarding the superiority of a stable keeper's possessory lien over a debtor's homestead exemption. Instead, Appellee argues that the *Epperley* Court should have reached the same result but upon grounds that defendant garageman made out a good claim for relief from § 34–4 exemptions as specifically provided in § 34–5(2). We need not address this question not only because the Bankruptcy Court in Epperley reached their decision on wholly separate grounds, leaving the construction of § 34–5(2)'s "laboring person" for another day, but because Appellant Rapidan characterizes its action, and we think properly so, as one arising under § 43–32, the independent nature and source of which has been detailed above. The facts before us are nearly identical to those in *Epperley;* there can be no question that Appellant Rapidan's possessory interest in the three horses, like the garageman's lien upon Epperley's automobile, attached in order to secure payment for the support and care already furnished. Likewise, we think it only fair that Appellant recover payment, which on our facts exceeds the aggregate value of the horses themselves, for that "enhanced value," that is, the sustained life of the horses, which, but for Appellant's labor and materials, would not have enured to Appellee's benefit.

■ One further question remains to be considered. Appellee O'Malley argues that even though Virginia has opted out of the federal exemptions available in 11 U.S.C. § 522(d) by virtue of Va.Code § 34–3.1 (1980 Cum.Supp.) and has substituted its own homestead exemption plan in Title 34 of the Virginia Code, a Virginia debtor nonetheless is empowered, pursuant to 11 U.S.C. § 522(f), to avoid judicial liens and non-possessory non-purchase money security interests in certain goods to the extent of the exemptions allowed under state law. We agree with this statement of the law. The power to avoid those interests contained in § 522(f) indeed operates independently of a state's choice regarding its exemption scheme. *See Beneficial Finance Co. of Virginia, Inc. v. Rodgers,* 5 B.R. 761, 764 (Bkrtcy.W.D.Va.1980). *See generally* 3 Collier on Bankruptcy § 522.29 (15th ed. 1979). From this premise, Appellee then argues that because Rapidan failed to enforce its possessory lien in accordance with the enforcement provisions set forth in § 43–34, Rapidan's once concededly statutorily-granted lien necessarily becomes judicial in nature and therefore subject to the debtor's avoidance power found in § 522(f). The Court cannot agree. Rapidan's possessory lien unquestionably arises solely by operation of law. *See* Va.Code § 43–32. *See also* 11 U.S.C. § 101(38) ('statutory lien' defined as lien arising solely by force of statute on specified circumstances or conditions ... but does not include security interest on judicial lien). Moreover, even where enforcement of a livery stable keeper's lien, provided for by statute, contemplates effectuation through the court system, such proceedings do not transform the underlying interest into a judicial lien. *See, e.g., In re Mero,* 128 F. 630 (D.Conn. 1904); *Moore v. Green,* 145 F. 472, 16 Am. Bankr.Rptr. 648 (D.W.Va.1906). In any case, § 522(f) operates only to avoid those liens which, by definition, are obtained "by judgment, levy, sequestration, or other legal or equitable process or proceeding." *See Rodgers, supra,* at 764; 11 U.S.C. § 101(27) (judicial lien). The mere fact that Rapidan failed to fully comply with the enforcement provisions of § 43–34 before Appellee filed for relief under Chapter 7 does nothing to alter the essential statutory

nature of its possessory lien upon the three horses left in its care. *See In re Mero, supra,* at 633.

There being no further question remaining for resolution, we reverse the ruling of the Bankruptcy Court and find for Appellant Rapidan to the extent of the value remaining in the three horses in question.