**In re James J. CLARK, Debtor.**

**Bankruptcy No. 97–14833–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 8, 1998.

John E. Carter, John E. Carter, P.C., Fairfax, VA, for Debtor.

Ronald K. Ingoe, Sterling, VA, for Equity Search, Inc.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtor's motion to avoid a deed of trust that secures Equity Search, Inc. The respondent has filed a response asserting that no statutory basis exists upon which its deed of trust may be avoided. A hearing was held in open court on January 6, 1998, at which the court ruled from the bench that the motion would be denied. This memorandum opinion supplements the court's bench ruling.

### Facts

James J. Clark ("the debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on June 30, 1997, and received a discharge of his dischargeable debts on October 10, 1997. His schedules reflect that he owns a house at 12108 Goodwood Drive, Fairfax, Virginia, which he valued at $270,000.[1] The property is shown as being subject to a first-lien deed of trust in favor of EMC Mortgage in the amount of $195,000 [2] and to a second-lien deed of trust in favor of Franklin National Bank in the

1. The debtor now says that the current assessed value of the property for real estate tax purposes is $250,665. The schedules do not reflect whether title is vested solely in the debtor. However, in a pleading filed in response to a controversy over the trustee's proposed abandonment of the property, the debtor asserted that the property was owned as tenants by the entirety with his non-debtor wife. Attached to the pleading is a copy of a recorded deed dated June 26, 1981, conveying the property to James J. Clark and Mary Jane Clark as tenants by the entirety. Mary Jane Clark is shown in the schedules as being a co-debtor on the EMC Mortgage and Franklin National Bank liabilities.

2. EMC Mortgage Corporation filed a proof of claim reflecting an amount owed of $196,953.76.

amount of $9,191.27.[3] On his schedule of property claimed exempt, the debtor has claimed $5,000.00 of the equity in the property as exempt under the Virginia homestead exemption, Va.Code Ann. 34–4. Equity Search, Inc., the respondent here, is not shown as being secured by the property but is listed as a secured creditor in the amount of $42,000, with the cryptic description of its collateral as "IRS Settlement Services." The debtor's statement of intention states that he intends to claim the collateral securing Equity Search, Inc. as exempt and to avoid its lien under § 522(f), Bankruptcy Code.

The motion before the court was filed by the debtor on November 21, 1997, and seeks to avoid under § 522(f), Bankruptcy Code, a deed of trust against 10128 Goodwood Drive, recorded on October 8, 1992, securing Equity Search, Inc. Equity Search opposes the relief on the ground that §. 522(f) does not permit its deed of trust to be avoided.

*Conclusions of Law*

I.

This court has jurisdiction over the present controversy under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. Venue is proper in this district under 28 U.S.C. § 1409(a). Under 28 U.S.C. § 157(b), this is a core proceeding in which final orders and judgments may be entered by a bankruptcy judge.

II.

■ Valid liens ordinarily pass through bankruptcy and are unaffected by a debtor's discharge. *Johnson v. Home State Bank,* 501 U.S. 78, 81–83, 111 S.Ct. 2150, 2153, 115

L.Ed.2d 66 (1991). Certain liens, however, may be set aside, or "avoided," under specific provisions of the Bankruptcy Code. Relevant to the present motion, § 522(f), Bankruptcy Code, permits a debtor "[to] avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled" if such lien is either "a judicial lien" or is

(B) a nonpossessory, nonpurchase-money security interest in any—

(i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

Thus, by the plain language of the statute, a nonpossessory, nonpurchase-money security interest may be avoided only (a) if it impairs an exemption claimed by the debtor[4] *and* (b) if it attaches to property of the type described in § 522(f)(1)(B)(i) through (iii), that is, household furnishings, tools of the trade, or professionally prescribed health aids. *See Security Pacific Fin. Corp. v. Barto (In re Barto),* 8 B.R. 145, 147 (Bankr.E.D.Va.1981), *aff'd sub nom. United States v. Security Pacific Fin. Co.,* 704 F.2d 142 (4th Cir.1983) (Congress intended to protect otherwise exempt household goods, furnishings and appliances typically having, at best, nominal resale value, but high replacement cost); *In re Wetzel,* 46 B.R. 254, 255 (Bankr.W.D.Va.

---

**3.** In a pleading opposing the trustee's proposed abandonment of the property, Timothy K. Lyon, who is listed in the schedules as an unsecured creditor, asserted that he held a judgment lien against the property in the amount of $67,-128.16, plus interest, and that his judgment lien was subordinate only to the first-lien deed of trust. The debtor filed a pleading asserting that the judgment was solely against him, and that the property was held as tenants by the entirety with his non-debtor wife, and that, accordingly, the Lyon judgment was not a lien against the property.

**4.** In response to conflicting judicial interpretations of when a lien "impairs" an exemption, Congress in the Bankruptcy Reform Act of 1994 amended § 522(f) to create a mathematical test for impairment. Specifically, a lien impairs an exemption to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property, exceeds the value the debtor's interest in the property would have in the absence of any liens. § 522(f)(2)(A).

1984) (consensual security interest in firearms could not be avoided because firearms are not household goods or furnishings); *In re Psick,* 61 B.R. 308, 313 (Bankr.D.Minn. 1985) (avoidance of consensual liens available only with respect to "a protected class of specific types of property"; dirt bike, tractor-loader and automobile did not fall within that class).

■ The Fourth Circuit has explained that "household goods" under § 522(f)(2)(A) "are those items of *personal property* that are typically found *in or around the home* and used by the debtor or his dependents to support and facilitate day-to-day living *within the home,* including maintenance and upkeep of the home itself." (emphasis added). *McGreevy v. ITT Financial Services (In re McGreevy* ), 955 F.2d 957, 961–62 (4th Cir. 1992). A house, quite simply, is not a household furnishing. *See, e.g., In re Coonse,* 108 B.R. 661, 662 (Bankr.S.D.Ill.1989) (holding that a lien against the debtor's mobile home could not be avoided as a household good under § 522(f)(2)); *In re Duss,* 79 B.R. 821, 822 (Bankr.W.D.Wis.1987) (consensual security interest in 30 acres of hay could not be avoided); *In re Snyder,* 67 B.R. 872, 875 (Bankr.W.D.Pa.1986) (mobile home not "household goods" for lien avoidance purposes); *In re Bova,* 44 B.R. 938, 939 (Bankr. E.D.Pa.1984) (holding that liens against property used as a residence, specifically a mobile home, were not intended to be avoidable under § 522(f)(2)). *But see In re Goad,* 161 B.R. 161, 163–64 (Bankr.W.D.Va.1993) (holding that debtor could avoid a consensual, non-purchase money security interest in the debtor's mobile home, but without discussion of whether the mobile home constituted a "household good"); *In re Dipalma,* 24 B.R. 385, 390–91(Bankr.D.Mass.1982) (holding that a debtor's mobile home could be considered a "household good" and that a lien against it could be avoided under § 522(f)(2)). Accordingly, § 522(f) cannot be used to avoid a deed of trust or other consensual security interest in real estate.

### III.

■ Although the debtor in his motion expressly characterized Equity Search's deed of trust as a "nonpossessory, nonpurchase-money security interest," *see* Motion, ¶ 3, at the hearing debtor's counsel shifted gears and argued that the deed of trust could also be considered a "judicial lien," since in Virginia deeds of trust must be recorded in the clerk's office of the Circuit Court for the city or county where the property is located—the same place where judgments are docketed. Va.Code Ann. §§ 55–96, 55–106 and 8.01–446. Unlike consensual security interests, judicial liens can be avoided in any type of property, not simply the three categories of property described in § 522(f)(1)(B)(i) through (iii).

■ A "judicial lien" is defined by § 101(36), Bankruptcy Code, as "[a] lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceedings." A deed of trust, however, is a security instrument, and while void as to purchasers for value without notice and lien creditors unless recorded, is effective to create a lien enforceable against the grantor even if it is not recorded. It depends on no act of the court where it is recorded for its validity, and requires no judgment or process to be effective.

The debtor has cited to no case, and the court's own research has disclosed none, in which a deed of trust or mortgage has been held to be a judicial lien simply because it was recorded in a courthouse. Indeed, the few reported decisions are to the contrary. *See, e.g., Commonwealth National Bank v. United States (In re Ashe* ), 669 F.2d 105, 108 (3d Cir.1982) (reasoning that a mortgage is not "affected by Section 522(f)(1) because [the mortgage] is created by a conveyance or contract rather than by a judgment or other legal proceeding"), *cert. granted and judgment vacated on other grounds sub nom.; Commonwealth National Bank v. Ashe,* 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982), *aff'd on other grounds sub nom., Commonwealth v. United States (In re Ashe* ), 712 F.2d 864, 868 (3d Cir.1983); *Brown v. Beneficial Consumer Discount Company,* 25 B.R. 319, 321 (M.D.Pa.1982) *rev'g sub nom., Riley v. Beneficial Consumer Discount Co. (In re Riley* ), 22 B.R. 35, 35 (Bankr.M.D.Pa.1982); *Gelletich v. Household Realty Corp. (In re Gelletich* ), 167 B.R. 370,

380 (Bankr.E.D.Pa.1994); *In re Sweeting,* 151 B.R. 322, 323 (Bankr.W.D.N.Y.1992); *Walker v. Fleet Consumer Discount Co. (In re Walker),* 72 B.R. 552, 553–54 (Bankr. W.D.Pa.1987) (mortgage was security interest and not judicial lien for lien avoidance purposes); *In re Endlich,* 47 B.R. 802, 806–07 (Bankr.E.D.N.Y.1985); *Lowell v. First Nat'l Bank of Cape Cod (In re Lowell),* 20 B.R. 464, 466–67 (Bankr.D.Mass.1982) (mortgage is not a "judicial lien" for lien avoidance purposes); *O'Malley v. Rapidan River Farm,* 24 B.R. 900, 903–04 (E.D.Va.1982) (livery stable keeper's statutory lien was not transformed into judicial lien for lien avoidance purposes simply because statute contemplated effectuation through court system). The court concludes, therefore, that the debtor cannot avoid Equity Search's deed of trust as a judicial lien.

### IV.

■ Finally, the debtor urges that this court may use its "equitable powers" to reduce the judgment lien to the value of the property. The Supreme Court has held, however, that "lien stripping"—that is, reducing a lien to the judicially-determined value of the collateral to which it attaches—is not available to a chapter 7 debtor. *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). For this court to use its powers as a court of equity to reduce or set aside Equity Search's deed of trust would be to do precisely what the Supreme Court has held the Bankruptcy Code does not permit. *See In re Bauer,* 1997 WL 752652, at *5 (Bankr.E.D.Va.1997) (noting that "the court's equitable powers must be exercised within the framework that Congress has established in the Bankruptcy Code" and that "Section 105(a) is not a roving commission to do equity.") (*citing Stokes v. Firestone (In re Stokes* ), 198 B.R. 168, 175 (E.D.Va.1996), *citing Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270 (8th Cir.1983)).

5. Because relief cannot be granted in any event, the court need not reach the issue of whether, for purposes of lien avoidance under § 522(f), the "value" of the property should be reduced, as the debtor proposes, by the assumed costs of sale.

### V.

For the foregoing reasons, a separate order will be entered denying the debtor's motion.[5]

*See Windfelder v. Rosen,* 82 B.R. 367, 372 (Bankr. E.D.Pa.1988) (debtor not entitled to reduce fair market value of collateral by transaction cost of hypothetical sale for purpose of lien avoidance calculation).