**In re Ronald Bennett HOEKSTRA,
Linda Turney Hoekstra,
Debtors.**

**Ronald Hoekstra, et al., Plaintiffs,**

v.

**Oak Cluster Community Council,
et al., Defendants.**

**Bankruptcy No. 99–12361–SSM.
Adversary No. 99–1297.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 5, 2000.

---

Steven B. Ramsdell, Tyler, Bartl, Burke & Albert, P.L.L.C., Alexandria, VA, for plaintiff.

Jason S. Zarin, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for United States of America.

William M. Vermette, Rees, Broom & Diaz, P.C., Vienna, VA, for Oak Cluster Community Council.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL,
Bankruptcy Judge.

Before the court are cross-motions for summary judgment filed by the debtors and by the United States of America, one of the two defendants in this adversary proceeding. A hearing was held in open court on May 2, 2000. The debtors and the United States were present by counsel. Oak Cluster Community Council ("Oak Cluster") did not file a response to the motion for summary judgment and was not present. There are no material facts in dispute, and the sole issue is whether 11 U.S.C. § 506(d) allows the debtors to "strip off" the liens against their residence securing the claims of Oak Cluster and the United States where there is no equity in the residence to support those liens.

### Background

There are no material facts in dispute. Ronald and Linda Hoekstra, who are husband and wife, filed a voluntary petition under chapter 13 of the Bankruptcy Code in this court on May 6, 1999. No plan was confirmed, and on August 6, 1999, they converted their case to chapter 7. The trustee filed a report of no distribution, and the debtors received a discharge of their dischargeable debts on December 3, 1999.[1] Relevant to the present controversy, they own a townhouse located at 2318 Sanford Street, Alexandria, Virginia,[2] which has a fair market value of $210,000. It is subject, in order of priority, to the following liens: (1) a first-lien deed of trust held by First Union National Bank, upon which there was owed, as of the filing date of the chapter 7 petition, $192,191.24; (2) a second-lien deed of trust held by Emily M. Glaub, upon which there was owed $41,960.00; (3) Federal tax liens for unpaid 1990 and 1992 Federal income taxes upon which there was owed $29,626.00; and (4) homeowners' association liens held by Oak Cluster Community Council upon which there was owed $9,568.67. The present action was commenced by the debtors on November 8, 1999, and seeks to avoid the Federal tax liens and the homeowners' association liens on the ground that such liens are void under 11 U.S.C. § 506(d), since there is no value in the property to which they could attach. The

1. There is a pending adversary proceeding (No. 99–1289) by the United States to determine the dischargeability of a $24 million claim against Ronald Hoekstra for alleged Medicare fraud. Subsequent to the granting of the chapter 7 discharge, Linda Hoekstra has filed a new chapter 13 case in this court, No. 00–10205–SSM.

2. The legal description of the property is Lot 25, Oak Cluster subdivision, City of Alexandria, Virginia.

United States and Oak Cluster filed answers denying that the debtors were entitled to the relief sought. The debtors and the United States then filed the cross-motions for summary judgment that are now before the court.

### Discussion

#### A.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Under 28 U.S.C. § 157(b)(2)(K), this is a core proceeding in which final judgments and orders may be entered by a bankruptcy judge. Venue is proper in this district under 28 U.S.C. § 1409(a). The defendant has been properly served and has appeared generally.

#### B.

Summary judgment is appropriate where there is no dispute as to the material facts, and the moving party is entitled to judgment as a matter of law. Fed. R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).

#### C.

■ The issue for determination is easily stated. Outside of bankruptcy (and barring foreclosure by a senior lien holder), a creditor who has a lien or other security for a claim retains the lien until the debt is paid in full, regardless of the value of the collateral relative to the debt.[3] In bankruptcy, however, the rule is different. Under 11 U.S.C. § 506(a), a claim is treated as secured "to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unse-

cured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." Thus, a creditor whose claim is secured by property which is worth less than the amount of the debt is treated in bankruptcy as being secured only to the extent the value of the collateral, with the balance of the claim being treated as unsecured. Additionally, 11 U.S.C. § 506(d) provides (with two exceptions not relevant here) that to the extent a lien "secures a claim against the debtor that is not an allowed secured claim, such lien is void."

Despite this seemingly straight-forward language, the Supreme Court, in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), held that § 506(d) does not allow a chapter 7 debtor to "strip down" a creditor's lien to a judicially-determined value of the collateral. However, the District Court for this district has ruled that *Dewsnup* prohibits only a "strip down" of an undersecured claim and not a "strip off" of a wholly unsecured claim. *Yi v. Citibank (Maryland), N.A. (In re Yi)*, 219 B.R. 394, 400 (E.D.Va.1998) (Ellis, J.).[4] In the present case, there is no question that the United States and Oak Cluster are wholly unsecured. The value of the house is $210,000, and prior valid liens (the First Union and Glaub deeds of trust) total $234,151.24. The debtors' equity of redemption, taking into account those two deeds of trust, has no value. Thus, the United States and Oak Cluster claims are wholly unsecured under 11 U.S.C. § 506(a) and therefore void under 11 U.S.C. § 506(d).

It is true that *Yi* is by no means the majority rule, and that a number of other courts have reached a contrary result.[5]

**3.** Of course, if the debt far exceeds the value of the collateral or if other creditors have superior liens that entirely consume the value of the collateral, the economic value of a particular lien may be nonexistent, but that is another issue.

**4.** *Yi* reversed a contrary ruling by this court that had relied on *Dewsnup* in dismissing an

action brought by chapter 7 debtors to strip off a wholly unsecured third deed of trust against their residence.

**5.** The only reported cases that have reached the same result as *Yi* are *Howard v. Nat'l Westminister Bank (In re Howard)*, 184 B.R. 644 (Bankr.E.D.N.Y.1995); *Zempel v. Household Fin. Corp. (In re Zempel)*, 244 B.R. 625

Nevertheless *Yi* is the only published decision in this District, and for that reason appropriately controls the disposition of the present motion.

### D.

 Two other arguments made by the United States require only brief discussion. First, it is argued—and the debtors do not deny—that the United States is secured by personal property belonging to the debtors in addition to the real property at 2318 Sanford Street. Thus, the United States argues that, far from being a wholly-unsecured creditor, it is merely an undersecured creditor whose lien under *Dewsnup* cannot be stripped-down. As noted in *Yi*, even one dollar of equity to which a creditor's lien could attach is sufficient to create a "strip-down" rather than "strip-off" situation. However, the court concludes that for the purpose of lien avoidance, each item of collateral must be viewed individually. (This is not a case, the court notes, where any of the senior lien-holders have other collateral, and where the doctrine of marshaling might arguably apply). As to the 2318 Sanford Street parcel, the United States is wholly unsecured. The avoidance of the lien as to that particular parcel does not affect or impair the lien of the United States as to any other property to which it may have attached.

The second argument made by the United States is that the only procedure by which a Federal tax lien can be released is that provided in 26 U.S.C. §§ 6322 and 6325. However, the argument that a Federal tax lien cannot be avoided under appropriate provisions of the Bankruptcy Code simply has no support and is contrary to the reported cases. *See, e.g., Reid v. IRS (In re Reid)*, 182 B.R. 443 (Bankr.E.D.Va.1995) (avoiding IRS lien against debtor's real estate under 11 U.S.C. § 544).

### E.

Since it is undisputed that there is no equity in the debtors' real estate to which the Federal tax liens or the homeowners' association liens can attach, those liens are void under 11 U.S.C. § 506(d). Accordingly, a separate order will be entered denying the United States' motion for summary judgment and granting the debtors' motion for summary judgment.

(Bankr.W.D.Ky.); and *Farha v. First American Title Ins. Co. (In re Farha)*, 246 B.R. 547 (Bankr.E.D.Mich.2000). Among the cases that have reached a contrary conclusion (holding that *Dewsnup* prohibits a strip-off and well as a strip-down) are *Crossroads of Hillsville v. Payne*, 179 B.R. 486 (W.D.Va. 1995), *In re Laskin*, 222 B.R. 872 (9th Cir. BAP 1998); and *In re Cunningham*, 246 B.R. 241 (Bankr.D.Md.2000).