**In re Michelle BLANKENSHIP.**

**Charles Darden, Appellant,**

v.

**Michele Blankenship, Appellee.**

**Bankruptcy No. 99–25293.**
**Civil Action No. 2:00cv473.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 20, 2001.

---

Charles Darden, Pro Se.

Tom C. Smith, Virginia Beach, for Defendant.

## ORDER

FRIEDMAN, District Judge.

This matter is before the Court on Charles Darden's appeal from a decision rendered by Judge Stephen C. St. John of the United Stated Bankruptcy Court for the Eastern District of Virginia. At the conclusion of the trial in this matter, the Court held in favor of the Ms. Blankenship, finding that the property was worth only $100, avoiding the lien other than the $100 value of the property. Mr. Darden, a lien holder on the property, appeals the decision arguing that the property has value and the Court's decision was clearly erroneous. For clarification of a legal issue, the Court conducted a hearing on the appeal on January 31. For the reasons set forth herein, the Bankruptcy Court's decision is REVERSED and REMANDED.

### Factual and Procedural Background

On August 13, 1999, Michele Blankenship[1] filed a Chapter 7 bankruptcy petition in the Eastern District of Virginia Bankruptcy Court. Charles Darden, t/a Churchland Emergency Plumbing, was listed among Ms. Blankenship's debtors. At the time she filed for bankruptcy, Ms. Blankenship owned a parcel of land in Portsmouth, Virginia, located at 3301 Dogwood Drive, Portsmouth, Virginia. Mr. Darden was one of Ms. Blankenship's creditors who had done all he could do to attempt to collect on a legitimate debt that went unpaid through no fault of his own, and had obtained a judgment lien against Ms. Blankenship's Dogwood Drive property in July 1989.

On October 26, 1999, Blankenship filed a complaint in Bankruptcy Court seeking to avoid Mr. Darden's and other creditor's liens pursuant to 11 U.S.C. Sections 506 and 522(f). Mr. Darden objected to the avoidance, and a hearing was held on the complaint on March 16, 2000. Ms. Blankenship presented evidence at the hearing that the subject property was environmen-tally contaminated, including the testimony of Paul E. Dickson, Jr. (an environmental consultant deemed an expert on environmental contamination and clean-up practices), Thomas Tye (an expert in appraisal of real estate), and Ms. Blankenship.

Mr. Dickson was qualified as an expert in his field, and testified regarding the subject property's contamination from the pesticides Chlorade and Heptachlor and that the projected cost to simply test the property to determine whether removal would be required was $35,000. Transcript at 15. He additionally testified that to develop the currently undeveloped land, it would cost approximately $700 per ton to remove the contaminated soil, assuming it was required. Dickson additionally reviewed documents previously prepared by the United States Environmental Protection Agency (EPA) and submitted by Mr. Darden regarding the subject property and the contamination. He testified that he did not disagree with the conclusions, but that the assumptions made by EPA were different than those on which he was working. Specifically, he testified that EPA's conclusions were based on "public health" concerns; whereas his conclusions were based on resident exposure on the sight. Transcript at 18–20. Mr. Dickson concluded that to change the resident status of the property (from unoccupied and undeveloped to occupied and developed) "there is a sufficient concern to reevaluate the exposure scenarios." Transcript at 20.

Thomas Tye, a real estate appraiser and qualified as a expert in the field, testified as to the appraisal value of Ms. Blankenship's subject property. He testified that if the lot was not contaminated and that if it was not affected by pollutants, then the property would be worth $42,500. Transcript at 26. However, based on the information he was provided from the environmental consultants, he testified that the costs to clean the contaminated property were in excess of $300,000. Transcript at

---

1. Darden contends that Ms. Blankenship is also known as "Michele Slowey."

26 (using the low end of the estimates provided). However, based on his assumption that the property could be of some value to someone, he gave the property the nominal value of $100. Transcript at 24–25.

Finally, Ms. Blankenship testified regarding the cause of the alleged contamination of the property—a terminate extermination in 1983 using Chlordane and Heptachlor, and the health consequences suffered by her family.

Mr. Darden did not call any witnesses. However, he relied on his exhibits, including the exhibit he relies on in this proceeding, prepared by the United States EPA. At the conclusion of the hearing, Judge St. John ruled from the bench granting Ms. Blankenship's complaint. The court held that Ms. Blankenship had "sustained her case by a preponderance of evidence under Section 522(f) and under Section 506." Transcript at 62. The court found, based on Mr. Dickson's and Mr. Tye's testimony and the remainder of the evidence, including the documentation submitted by Mr. Darden, that the subject property was worth $100 (the nominal value suggested by Mr. Tye). Based on this finding of fact, the court avoided the lien under both Sections 506 and 522, with the exception of the assigned $100 value. The Court's decision was set forth in an order issued March 23, 2000 (drafted, at the Bankruptcy Court's request, by counsel for Ms. Blankenship). Transcript at 64.

Mr. Darden appealed the factual findings of the Bankruptcy Court and its determination of the value of Ms. Blankenship's property. Based on this Court's review of the pleadings and the proceedings before the Bankruptcy Court, on January 31, the Court conducted a hearing for the limited purpose of determining the parties' positions as to one legal issue. For the following reasons, the judgment of the Bankruptcy Court is hereby REVERSED.

## Standard of Review

 The bankruptcy court's final judgments, orders, and decrees are reviewable by the district court. *See* 28 U.S.C. § 158(a). Factual findings are subject to the clearly erroneous standard, and questions of law, including statutory construction, are reviewed *de novo. In re Southeast Hotel Prop. Ltd. Partnership,* 99 F.3d 151, 153 (4th Cir.1996) (*citing In re Johnson,* 960 F.2d 396, 399 (4th Cir. 1992)). When a decision rests in the discretion of the bankruptcy court, it should be set aside only when the reviewing court determines (1) that the decision was based on an erroneous conclusion of law, (2) that the record of the proceedings contain no evidentiary basis for the decision, or (3) that the factual findings of the court are "clearly erroneous." *In re Jackson,* 121 F.3d 698, 1997 WL 467534 (4th Cir.1997) (citations omitted) (unpublished).

## Analysis

 As set forth above, Ms. Blankenship filed a Chapter 7 bankruptcy in August 1999. *See* Bankruptcy Court's Order (Mar. 23, 2000). Among the creditors listed in Ms. Blankenship's petition was the defendant, Charles Darden, t/a Churchland Emergency Plumbing. Generally, liens pass through the bankruptcy process unaffected. This is because "a bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property." *In re Deutchman,* 192 F.3d 457, 460 (4th Cir.1999) (quoting *Cen–Pen Corp. v. Hanson,* 58 F.3d 89, 92 (4th Cir.1995)). Rather, in order to modify a lien, the debtor must take some affirmative step; for example, filing a complaint seeking an avoidance of the lien under a statutory section of the Bankruptcy Code. *Deutchman,* 192 F.3d at 460. Toward that end, in October 1999, Ms. Blankenship filed a complaint in Bankruptcy Court seeking to avoid Mr. Darden's judgment lien on her property pursuant to Sections 506 and 522 of the Bankruptcy Code. The

Bankruptcy Court conducted a thorough evidentiary hearing on Ms. Blankenship's complaint and based on the evidence adduced, the court found that Ms. Blankenship's motion had merit and that the lien was avoided pursuant to Sections 506 and 522(f).

In this case, the Bankruptcy Court relied on both Sections 506 and 522, and after determining that the property in question was worth only $100, the Bankruptcy Court avoided Mr. Darden's lien but for $100. First, based on Mr. Darden's appeal, the Court must conduct a *de novo* review of the Bankruptcy Court's legal conclusions. It is well accepted that valid liens generally pass through bankruptcy and are unaffected by a debtor's discharge. *In re Clark*, 217 B.R. 177, 178 (Bankr.E.D.Va.1998) (citations omitted). However, it is additionally well accepted that some liens may be avoided by the debtor under certain provisions of the Bankruptcy Code. *Id.* As set forth above, the Bankruptcy Court avoided Mr. Darden's lien under Sections 506 and 522(f), except for the $100 value of the property. Therefore, the Court will review the avoidance under each section. Second, the Court must determine whether the factual findings (the value assigned to the property) were clearly erroneous.

### Section 506

■ Section 506 provides that a creditor can only be secured for the value of the property. 11 U.S.C. § 506. Courts have construed the language of Section 506 to mean that to the extent that a lien cannot be secured by the value of the property, the lien may be avoided. 11 U.S.C. § 506; *see Gaglia v. First Federal Sav. & Loan Ass'n*, 889 F.2d 1304 (3d Cir.1989) (allowing avoidance of lien in excess of value of the property); *see also Matter of Folendore*, 862 F.2d 1537 (11th Cir.1989) (discussing Section 506 generally).

However, this Court interpreted the available "avoidance" mechanism available under Section 506 in *Hargrove v. Edwards*

*Co., Inc.*, and held that Section 506 could not be used to "strip down" a lien. *Hargrove v. Edwards Co. Inc.*, 133 B.R. 765 (E.D.Va.1991) (Doumar, J.). Shortly after the *Hargrove* decision, the Supreme Court decided *Dewsnup v. Timm*, in which it interpreted Section 506, and resolved a the split in the circuits described in *Hargrove* holding that a Chapter 7 debtor could not "strip down" a creditor's lien on real property to the judicially determined value of the collateral. *Dewsnup v. Timm*, 502 U.S. 410, 415–17, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In *Dewsnup* the debtor asked the Court to split the debt into secured and unsecured components based on the value of the real estate, and then to discharge the unsecured component. *Id.* This "stripping down" process of splitting the lien into secured and unsecured components was deemed improper in *Dewsnup* where the Court noted that allowing otherwise would cause a "windfall" to the debtor. *Id.* at 416, 112 S.Ct. 773.

Upon its initial review of the facts and relevant law in this case on appeal, this Court became concerned that the Bankruptcy Court's decision to value the property at $100, and then avoid Mr. Darden's lien except for the $100 value was contrary to the Supreme Court's decision in *Dewsnup*. As a result, this Court queried the parties on the issue, allowing briefs, and ultimately conducting a hearing on that limited issue.

When questioned on this legal issue, first, Blakenship argues that the *Hargrove* and *Dewsnup* cases involved debtors avoiding liens on real estate when the lien is only partially secured, or in *Dewsnup* where the lien was a consensual mortgage lien. Because this case involves Mr. Darden's non-consensual judgment lien, Blankenship argues that the facts in *Hargrove* and *Dewsnup* can be distinguished. However, contrary to Blankenship's attempt to distinguish these cases on this basis, the Court finds this distinction irrelevant.

Blankenship contends that facts here are more similar to the facts in *In re Howard,* 184 B.R. 644 (Bankr.E.D.N.Y. 1995), and *Yi v. Citibank (Maryland), N.A.,* 219 B.R. 394 (E.D.Va.1998) (Ellis, J.). *Howard* involved a non-consensual judgment lien, and the court held that a non-consensual judgment creditor takes his or her chances when attempting to secure the judgment. However, a more important distinction from this case and *Howard,* is that in this case, as in *Dewsnup,* there was value remaining in the property (based on the $100 valuation). In *Howard,* there was no value remaining in the property. *Howard,* 184 B.R. at 645. Because the amount of the mortgage exceeded the value of the real property, the *Howard* court found the judgment lien to be "wholly unsecured." *Id.* at 647. Because in this case the judicially determined value was $100, not zero, the *Howard* case is inapplicable.

Blankenship also relies on *Yi v. Citibank,* where a distinction was created under Section 506 between "stripping down" (as applied in *Dewsnup* ) and "stripping off." *Yi,* 219 B.R. at 399–401 (Ellis, J.). Under *Yi,* which is currently the law in this circuit, unlike avoiding just a portion of the lien when it is "stripped down," a loan is "stripped off" when there is no value left in the property and the loan is completely avoided. *Id.* Based on this distinction, the court in *Yi* allowed complete avoidance of the lien under Section 506(a).

In this case, Blankenship argues that the $100 value determined by the Bankruptcy Court is so "minuscule," that the lien is really "stripped off," and not impermissibly "stripped down." However, the clear language from *Yi* counsels against such a finding. Contrary to Blankenship's conclusions, in *Yi* the court held that Section 506 must be given its plain meaning and even a $1.00 difference in a valuation

might make the difference of whether a loan could be avoided under Section 506. *Yi,* 219 B.R. at 400–01, n. 19 (citing *In re Plouffe,* 157 B.R. 198 (Bankr.D.Conn. 1993)). The court in *Yi* admonished that parties in a bankruptcy proceeding are fully aware of the "integral role that valuation plays" and that a party's lack of confidence in the valuation was a result of their own failure to challenge the judicially determined valuation. *Yi,* 219 B.R. at 401.

The most recent published case addressing the issue of "stripping down" under Section 506 is *In re Hoekstra,* 255 B.R. 285 (E.D.Va.2000) (Lee, J.). In *Hoekstra,* the bankruptcy court reluctantly followed *Yi* finding that subject lien could be "stripped off," and therefore, was distinguishable from *Dewsnup.* *Hoekstra,* 253 B.R. 193, 195, n. 5 (Bankr.E.D.Va.2000) (noting that *Yi* is not representative of the majority rule in other circuits, but is the only published decision in this circuit). However, on review by the district court, the court reversed the bankruptcy court finding that the non-consensual IRS lien that Hoekstra sought to avoid was not completely "stripped off" as defined by *Yi,* but was merely "stripped down," and therefore, was prohibited under *Dewsnup.* *Hoekstra,* 255 B.R. at 291 (Lee, J.). The court in *Hoekstra* found that the lien was "partially secured by the debtor's personal property" and that "there remains recourse to collateral underlying the ... tax lien," and therefore, the lien could not be voided. *Hoekstra,* 255 B.R. at 291.

The *Hoekstra* case (not addressed by Blankenship) is directly applicable here and convinces the Court that the $100 value assigned to the property by the Bankruptcy Court, while not precise and indeed nominal, causes the lien to be "stripped down" rather than "stripped off," and therefore, is fatal to the avoidance under Section 506.[2] Finally, the Fourth

---

2. As a final attempt at distinguishing this case, Blankenship argues that the facts in this case are distinguishable from those in the *Dewsnup* and *Hargrove* cases because the

property here was not "abandoned" (pursuant to Section 554 of the Bankruptcy Code) by the Trustee at the time the decision was made by the court. However, while the prop-

Circuit has recently acknowledged the distinction between stripping off and stripping down in affirming the bankruptcy court and district court in their discussion of stripping down under Section 506. *See In re Smith*, 243 F.3d 540, 2001 WL 22918 (4th Cir.2001) (unpublished).

For the reasons set forth above, the Court finds that the Bankruptcy Court's decision to avoid all of Mr. Darden's lien except for the $100 value assigned to the property by the Court constitutes an impermissible "stripping down" of the lien under Section 506. As a result, the Bankruptcy Court's conclusions under Section 506 must be REVERSED.[3]

*Section 522(f)*

As argued by Ms. Blankenship, however, the Bankruptcy Court offered an alternative ruling under Section 522(f) which must additionally be reviewed on appeal. Section 522(f) provides that the court may avoid a judgment lien to the extent that the lien impairs the equity the debtor has exempted in the property. 11 U.S.C. § 522(f); *see also In re Silveira*, 141 F.3d 34, 35–36 (1st Cir.1998). In 1994, Congress amended the Bankruptcy Code and specifically amended Section 522(f) to include a new mathematical formula to determine whether an exemption is "impaired."[4] *See generally Nelson v. Scala*, 192 F.3d 32, 33–34 (1st Cir.1999).

Based on the above analysis under Section 506, and Blankenship's near concession at argument that the consequence of the valuation of $100 was that the lien was "stripped off," Blankenship now relies heavily on Section 522. In doing so, she argues that, unlike an avoidance under Section 506, the court's avoidance under Section 522 was perfectly permissible and not implicated by *Hargrove* and *Dewsnup*, or the subsequent line of cases discussed above.[5]

Section 522 allows a debtor to exempt from his or her estate property exempt under either state of local law. However, even the exemptions claimed "are not automatically secure because the exemption, standing alone, merely protects the assets from distribution to general creditors; the exemption itself is not deemed to nullify liens held secured by creditors." *Nelson v. Scala*, 192 F.3d 32 (1st Cir.1999) (citing *Dewsnup*, 502 U.S. at 418, 112 S.Ct. 773). Section 522 additionally provides that a lien can be avoided to the extent that it impairs the debtor's exemptions. Specifically, the 1994 amendments to the Section 522(f) provide as follows:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would

---

erty was not "abandoned" at the time of the hearing, part of the purpose of the hearing before the Bankruptcy Court was to determine whether the property could be abandoned. As a result of the hearing, the property was abandoned on May 2, 2000 (three months after the Bankruptcy Court's decision). Therefore, this distinction is meaningless.

**3.** The Court notes that the usefulness of Section 506 in this case may vary depending on the Bankruptcy Court's factual findings at a future hearing in this case.

**4.** Prior to the 1994 amendments to the Code, the circuits were somewhat split on the methodology of determining when an exemption

was impaired. *See e.g., In re Wrenn*, 40 F.3d 1162 (11th Cir.1994) (allowing avoidance of lien only to extent of exemption); *Dorsey v. Sanders (In re Sanders)*, 39 F.3d 258, 261–62 (10th Cir.1994) (three step process of determining application of Section 522); *In re Chabot*, 992 F.2d 891 (9th Cir.1993)(determining when avoidance was allowable).

**5.** The Court notes, however, that while the opinion in *Hargrove* did not thoroughly analyze the effects of Section 522 and avoidance as it did Section 506, the *Hargrove* court did acknowledge that the lien was avoided under both Sections 506 and 522, and the additional Section 522 avoidance did not appear to change the court's ultimate decision to reverse.

have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

 (i) to a spouse, . . . and

 (ii) to the extent that such debt—

 (I) is not assigned to another entity, voluntarily, by operation of law, or otherwise; and

 (II) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support; or

(B) a nonpossessory, nonpurchase-money security interest . . . .

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

 (i) the lien;

 (ii) all other liens on the property; and

 (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f). *See Silveira,* 141 F.3d at 36.

Ms. Blankenship relies heavily on the First Circuit's 1998 decision in *Silveira.* In *Silveira,* the parties stipulated that the property subject to the lien had a market value of $157,000, and was subject to a mortgage of $117,680. The appellant, East Savings Cambridge Bank, held a judicial lien of $209,500. Silveira, the debtor, claimed an exemption of $15,000 pursuant to 11 U.S.C. § 522(d). Based on this exemption, he filed a motion to avoid the bank's $209,500 lien pursuant to Section 522(f). Clearly, the value of the lien and the mortgage lien exceeded the stipulated value of the property in *Silveira.* As a result, the First Circuit found that the exemption was "impaired" within the meaning of Section 522(f). However, the court went on to analyze the "extent of the debtor's power under § 522(f)(1) to alleviate the 'impairment.'" *Silveira,* 141 F.3d at 36. The First Circuit concluded that Section 522 provides for a proportional measure of the scope of the debtor's avoidance powers. *Id.* Specifically, the bank's lien was avoided only to the extent that it impaired Silveira's exemption, and the remainder of the lien remained. *Id.; see also Nelson,* 192 F.3d at 34 (distinguishing *Silveira* and allowing avoidance to the extent it impaired exemption); *In re Cisneros,* 257 B.R. 332 (Bankr.D.N.M.2000) (allowing partial avoidance under Section 522); *Tedeschi v. Falvo,* 227 B.R. 662 (6th Cir. BAP 1998).

Applying the mathematical formula from *Silveira* (which attempts to interpret Section 522(f)) to the facts of this case would result in the following: adding the value of Mr. Darden's lien (which is the only remaining lien on the property to which this Court is aware) to Ms. Blankenship's $1.00 claimed homestead exemption,[6] and subtracting that sum from the value of the subject property (previously determined to be $100). Using the previously determined amounts (but not specifically stating the value of Mr. Darden's lien), the Bankruptcy Court found that, based on the facts of this case, Mr. Darden's lien was avoidable under Section 522(f) for all but $99 (the difference between the value of the property and the claimed $1.00 homestead exemption). However, based on the Court's decision set forth below regarding valuation, the avoidability of the lien under

---

**6.** The Court recognizes that Mr. Darden argues that the $1.00 exemption is a "fraud" based on his disagreement with the value of the property which is discussed in more detail below. It is likely that the validity of Ms. Blankenship's claimed $1.00 exemption in the abandoned and undeveloped property in Portsmouth is an additional matter which the Bankruptcy Court might review in its reconsideration of the facts in this case. *See In re Hoss,* 233 B.R. 684 (W.D.Va.1999) (denying exemption claimed for mobile home).

Section 522(f) must be reassessed based on a new valuation of the property.

### Review of Factual Findings

■ As set forth above, the Court reviews factual findings of the bankruptcy court under the clearly erroneous standard of review. *In re Southeast Hotel,* 99 F.3d at 153. A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The bankruptcy court's determination as to the value of the property is a factual finding.

■ Mr. Darden alleges that the Bankruptcy Court was clearly erroneous in valuing the property at $100 based on his interpretations of a memorandum from the United States EPA concerning the public health impact of the property. Specifically, Mr. Darden claims that the value is greater than $100 because he doubts the findings of environmental contamination.

The Court has fully reviewed the facts set forth at the hearing conducted by the Bankruptcy Court, including the exhibits and the transcript of the proceeding. Mr. Tye was the first to suggest such a valuation, and he did so based on his assumption that the property could be purchased from someone for some amount. Transcript at 24–25. While the Court understands the common sensical approach to valuation used and adopted by the Bankruptcy Court, the decision to value the property at $100, rather than any other amount less or greater than $100, was arbitrarily chosen and is unsupported by the facts of the case. For example, the Court recognizes that one witness testified that the property has an appraised value of greater than $40,000. However, witnesses testified that the cost to sample the property to determine the contamination would be in the range of $35,000, and then additional costs would accrue on perhaps a yearly basis depending on the results of the testing. Mr. Darden, of course, objects that the additional sampling is necessary. Therefore, based on the evidence provided, this Court FINDS that the Bankruptcy Court's valuation of $100 was clearly erroneous. As a result, this matter must be remanded to the Bankruptcy Court for additional findings of fact to determine the value of the property and then, whether either Section 506 or Section 522(f) is applicable.

### Conclusion

As set forth above, it is hereby ADJUDGED and ORDERED that:

(1) the Bankruptcy Court's conclusions under Section 506 are REVERSED;

(2) the Bankruptcy Court's avoidance of the lien under Section 522(f) is REMANDED for further proceedings based on the valuation of the property and the validity of the challenged exemption;

(3) the Bankruptcy Court's factual finding regarding the value of the property is clearly erroneous and therefore, is REVERSED and REMANDED for a new evidentiary hearing or whatever course the Bankruptcy Court deems appropriate to reach a new valuation of the subject property consistent with this Opinion.

It is so ORDERED.